BENJAMIN H. WELSH, administrator, *vs.* CHARLES O. WOODBURY, administrator.

Middlesex.    March 17. — May 20, 1887.    FIELD, C. ALLEN, & GARDNER, JJ., absent.

A testator, by his will, gave to his wife "the use and income, during her natural life, of all my property and estate, personal and real, for her support, comfort, and enjoyment, or for any other purpose as she may in her judgment deem necessary ; and if said income shall in her judgment be insufficient for her support, comfort, enjoyment, or for any other purpose for which she may wish to spend money, it is my will that she may spend the proceeds arising from the sale of any of my personal or real estate ; and I hereby give her power to sell in her sole and individual name any of my personal or real estate, and to convey and transfer by deed or other instrument, in her own name, for the above-named purposes, or for investment or reinvestment ;" and gave one half of the residue of his estate remaining at his wife's death to his sister. The testator's sister died before his wife, who sold none of the estate. *Held*, that the wife took a life estate coupled with a power ; and that the limitation to the sister was valid, and passed to the administrator of her estate.

CONTRACT, by the administrator of the estate of Lydia Hobbs, against the administrator *de bonis non*, with the will annexed, of the estate of Aaron Jacks, to recover the amount of a legacy given to said Lydia by the will. The case was submitted to the Superior Court, and, after judgment for the plaintiff, to this court, on appeal, upon agreed facts, in substance as follows :

The plaintiff was duly appointed administrator of the estate of Lydia Hobbs, widow, on November 1, 1886. The defendant

was duly appointed administrator *de bonis non*, with the will annexed, of the estate of Aaron Jacks, on March 3, 1884. The will was admitted to probate on February 2, 1880, and the material portions of it are as follows:

" I give and devise as follows: 1st. To my beloved wife, Mary Jacks, the use and income, during her natural life, of all my property and estate, personal and real, for her support, comfort, and enjoyment, or for any other purpose as she may in her judgment deem necessary; and if said income shall in her judgment be insufficient for her support, comfort, enjoyment, or for any other purpose for which she may wish to spend money, it is my will that she may spend the proceeds arising from the sale of any of my personal or real estate. And I hereby give her power to sell in her sole and individual name any of my personal or real estate, and to convey and transfer by deed or other instrument, in her own name, for the above-named purposes, or for investment or reinvestment.

" 2d. Of the property and estate remaining at the death of my said wife I give and devise to the Orthodox Congregational Society in said Methuen, known as the First Parish, the sum of five thousand dollars. . . . .

" 3d. All the rest and residue of my estate personal and real, remaining at the death of my said wife, I give and devise as follows: To my sister Lydia Hobbs . . . . one half of the same."

The testator died in 1879. Lydia Hobbs died in October, 1880, leaving children. Mary Jacks, the widow of Aaron Jacks, died in December, 1883. Lydia Hobbs was the only sister of the testator, and at the date of execution of the will and at the death of the testator she was poor. The testator and his wife, Mary, lived together for sixty years on a small farm in Methuen, and never had any children, and during said time lived in a simple and rigidly economical manner. The income of the estate left by the testator was amply sufficient to support his widow for the remainder of her life in the manner in which she had been accustomed to live during all of her married life, and in a mode consistent with her tastes and station in life. At the date of the execution of the will and of the death of the testator, Mary Jacks held in her own right, and well invested, personal property of the value of about $2000, and this was known by

the testator.    After the death of Mary Jacks, the estate left by
the testator then remaining in this Commonwealth was appraised
as follows : real estate, $2000 ; personal estate, $8362.18.   None
of the real estate, after the death of the testator, was sold or
otherwise disposed of, but remained at the time of the death of
said Mary Jacks in substantially the same condition, and of about
the same value, as at the death of the testator.   The personal
estate of the testator was appraised after his death at $8476.61,
and at the time of his death was invested in bank stocks and
deposited in five different savings banks.   At the death of Mary
Jacks, no change or transfer of said bank stocks had been made,
and the deposits remained in the same savings banks in the
name of Aaron Jacks, but Mary Jacks, as executrix of the will,
has drawn from time to time from said savings banks the ac-
crued interest on said deposits, and from some of them a small
portion of the principal.   The deposits, in the aggregate, at the
time of said Mary's death, were about $140 less than the aggre-
gate at the testator's death.   The bank stocks were of the value
of about $3600.   At the death of the testator, he owned a wood
lot in the State of New Hampshire of the value of about $2500,
but Mary derived no income from the same, and had nothing to
do with said lot after her husband's death.   This wood lot and
the above described property comprise the entire estate left by
the testator, who had no other occupation than that of a farmer.
His widow filed no waiver of the provisions of the will made in
her behalf.

The defendant was duly appointed administrator of the estate
of said Mary Jacks on April 14, 1884.  · As administrator of the
estate of Aaron Jacks, the defendant has filed his final account,
which has been duly allowed, and, prior to the date of the plain-
tiff's writ, December 1, 1886, there was in the hands of the de-
fendant a balance of personal estate amounting to $9004.95, due
and payable to the parties entitled thereto.   Sufficient demand
was made by the plaintiff upon the defendant prior to the date
of the writ.

If, upon the foregoing facts, the plaintiff was entitled to re-
cover any portion of said balance of personal estate, judgment
was to be entered for the plaintiff for $2002.47 ; otherwise, judg-
ment for the defendant.

*E. T. Burley*, for the defendant.

*W. L. Thompson & H. C. Holt*, for the plaintiff.

HOLMES, J.   The testator's wife, Mary Jacks, took a life estate coupled with a power, and the limitation to his sister, Lydia Hobbs, was valid. *Ayer* v. *Ayer*, 128 Mass. 575, 577.   *Smith* v. *Snow*, 123 Mass. 323.   *Kuhn* v. *Webster*, 12 Gray, 3.   The suggestion which has been made, that it is hard to distinguish between enjoyment for life with absolute power of disposition, and absolute ownership, *Bradly* v. *Westcott*, 13 Ves. 445, 451, is met by these cases, and by the testator's clear expression of his intent to give an estate for life only.   See also *Kelley* v. *Meins*, 135 Mass. 231, 234; *Anon.* 3 Leon. 71, pl. 108; 13 Ves. 453; *Reith* v. *Seymour*, 4 Russ. 263; Sugd. Powers, (7th ed.) 123–125. And the technical doctrine of *Kelley* v. *Meins* is avoided by this technical distinction.   For the ground of *Kelley* v. *Meins* and that class of cases, whether concerning personal or real estate, is that the limitation over is an attempt to take away one of the incidents of ownership, and to say that, if the owner does not dispose of his property in his life or at his death, it shall devolve otherwise than as the law has provided.   This objection does not apply to a remainder after a life estate, even when the life estate is coupled with a power.

The objection to the uncertainty of what will be the subject of the limitation over, which was once thought to be a further ground for the doctrine of *Kelley* v. *Meins*, as applied to personal property, seems to be discredited by the later English decisions cited in that case, and never has been applied to a life estate coupled with a power.   Cases *supra*.   *Surman* v. *Surman*, 5 Madd. 123.   *In re Thomson's estate*, 13 Ch. D. 144.   *Burleigh* v. *Clough*, 52 N. H. 267.   See *Ross* v. *Ross*, 1 Jac. & W. 154, 158; *Cuthbert* v. *Purrier*, Jac. 415, 417; *Green* v. *Harvey*, 1 Hare, 428, 432.

Whether the legacy to the testator's sister was contingent, *Johnson* v. *Battelle*, 125 Mass. 453, *Taft* v. *Taft*, 130 Mass. 461, *Kelley* v. *Meins*, 135 Mass. 235, or vested, *Burleigh* v. *Clough, ubi supra*, it passed to her administrator upon her death before the wife.   *Winslow* v. *Goodwin*, 7 Met. 363.   *Dunn* v. *Sargent*, 101 Mass. 336.   *Putnam* v. *Story*, 132 Mass. 205, 210.

*Judgment for the plaintiff affirmed.*