ELIZA J. WOODMAN

*vs.*

MOSES G. WOODMAN, and others.

Cumberland.    Opinion April 9, 1896.

*Will.    Vested and Contingent Remainders.*

A vested remainder is an estate to take effect after another estate for years, life or in tail, which is so limited that if that particular estate were to expire or end in any way at the present time, some certain person who was in esse and answered the description of the remainder-man during the continuance of the particular estate, would thereupon become entitled to the immediate possession, irrespective of the concurrence of any collateral contingency. A remainder is contingent when it is so limited as to take effect in a person not in esse, or not ascertained, or upon an event which may never happen or may not happen until after the determination of the particular estate.

It is an elementary rule of construction, which has always been uniformly enforced, that no remainder will be construed to be contingent, which may consistently with the intention of the testator, be deemed vested.

A remainder is not made contingent by an uncertainty as to the amount of property that may remain undisposed of at the expiration of the particular estate, the life-tenant having the power of disposal.

A testatrix, by the eighth clause in her will, bequeathed and devised all the residue of her estate, real, personal and mixed, to her sons, and the survivor of them, to have and to hold the same in trust for the benefit and support of her husband and her daughter during the lives of the beneficiaries and that of the survivor. By the same clause, the trustees were authorized, "should it become necessary to perform the object of this trust, to sell and convey by good and sufficient deed the real estate, after first using therefor the personal estate, as the necessity for said purpose may require."

By a codicil to her will she made the following disposition of the property mentioned in the clause above referred to: "After the termination of the trust estate mentioned in the eighth article, by the decease of both my husband and Henrietta, I give, bequeath and devise to my son, Moses G., seven-sixteenths of my lot and store on Exchange Street, Portland, to him and his heirs forever. To my daughter, Susan, five-sixteenths of the same lot and store to her and her heirs forever. To my son, Charles M. G., the remaining fourth part of the same lot and store, to him and his heirs forever. And I make this distinction and difference not from the slightest unequal affection, but only in consideration of the present financial differences in the respective conditions of my children. All the remainder of my estate, of every kind and description, I give, bequeath and devise to my son, Charles M. G., Moses G., and to Susan M. G. Newton, share and share alike, to them and their

heirs forever; and if either of my children die previous to my decease it is my will and desire that my grandchildren shall inherit as the representative or representatives of the parent thus deceased."·

The testatrix died in 1870, her husband in 1881 and the daughter, Henrietta, the survivor of the beneficiaries in the trust estate, March 8th, 1891. Charles M. G., died February 27th, 1889, without issue, leaving a widow, the plaintiff. The Exchange Street property was not disposed of by the trustees, under their power of disposal, during the lives of the beneficiaries.

*Held;* that it was clearly·the intention of the testatrix to create by her will, a ,vested and not a contingent remainder in the Exchange Street property, and that the language used was appropriate for this purpose.:

That the trustees took an estate for the lives of the beneficiaries, with a power of disposal if it should become necessary⌄— That the remainder over, upon the death of the testatrix, vested in her sons, Moses and Charles, and her daughter, Henrietta, of which they might have been divested by an execution by the trustees of their power of disposal during the lives of the benefici- aries, according to the terms of the will.

Charles M. G., who took a vested remainder in one-fourth of the Exchange Street property, and who died Februray 27th, 1889, prior to the termination of the particular estate, left a will by which he devised to his sister, "all the right, title and interests, which I may have at the time of my decease," in and to the homestead of his late mother. The second clause of his will is as follows: "All the rest, residue and remainder of my estate, real, personal and mixed, wherever found or situated, of which I may die seized or possessed, I give, devise and bequeath unto my beloved wife, Eliza Jane Woodman [the plaintiff],—and being in lieu of dower,—to have and to hold the same to her, her heirs and assigns forever."

*Held;* that this language clearly shows an ·intention upon the part of the testator to dispose of all of his property, and to give his wife all the residue of his estate, whether in possession or in remainder, and that it was appro- priate language to carry out this intention :—That the vested remainder, which the testator took under the will of his· mother, was a part of the estate of which he was in possession at the time of his death and was included in the devise in favor of the plaintiff.

*Leighton* v. *Leighton,* 58 Maine, 67, affirmed.

AGREED STATEMENT.

The case is stated in the opinion.

*F. C. Payson, H. R. Virgin* and *H. M. Davis,* for plaintiff.

*J. W. Symonds, D. W. Snow* and *C. S. Cook,* for Moses G. Woodman.

*Wm. P. Hale,* for Susan G. Newton.

SITTING: PETERS, C. J., WALTON, FOSTER, HASKELL, WIS-
WELL, STROUT, JJ.

WISWELL, J.    This is a real action to recover one undivided-
fourth of a lot of land and the store thereon, situated on Exchange
Street in the city of Portland.

The plaintiff claims title as the residuary legatee under the
will of her husband, Charles M. G. Woodman, who was one of the
devisees in the will of his mother, Mary G. Woodman.    It is
admitted that Mary G. Woodman was the owner of the property
in controversy at the time of her death.    The questions presented
are, what estate if any in the demanded premises, did Charles
acquire under the will of his mother; and did that estate pass to
the plaintiff by virtue of his will.    These questions involve the
construction of portions of both wills.

I.    By the eighth clause in her will, Mary G. Woodman
bequeathed and devised all the residue of her estate, real, personal
and mixed, to her sons, Charles and Moses, and the survivor of
them, to have and to hold the same in trust for the benefit and sup-
port of her husband, Daniel Woodman, and her daughter, Henrietta
G., during the lives of the beneficiaries and that of the survivor.
By the same clause, the trustees were authorized, "should it be-
come necessary to perform the object of this trust, to sell and con-
vey by good and sufficient deed the real estate, after first using
therefor the personal estate, as the necessity for said purpose may
require."

By the ninth clause she bequeathed and devised all of her estate
mentioned in the eighth article, real, personal and mixed, remain-
ing at the termination of the trust mentioned in the preceding
article, to her sons, Charles and Moses, and her daughter, Susan,
in equal shares.

By a codicil to this will she made certain changes in other por-
tions of the will, not necessary to be noticed here, revoked the
ninth   clause   and   substituted   the   following   provision   in   lieu
thereof:

"After the termination of the trust estate mentioned in the

eighth article, by the decease of both my husband and Henrietta, I give, bequeath and devise to my son, Moses G., seven-sixteenths of my lot and store on Exchange Street, Portland, to him and his heirs forever. To my daughter, Susan, five-sixteenths of the same lot and store, to her and her heirs forever. To my son, Charles M. G., the remaining fourth part of the same lot and store, to him and his heirs forever. And I make this distinction and difference not from the slightest unequal affection, but only in consideration of the present financial differences in the respective conditions of my children. All the remainder of my estate of every kind and description, I give, bequeath and devise to my sons, Charles M. G., Moses, G., and to Susan M. G. Newton, share and share alike, to them and their heirs forever, and if either of my children die previous to my decease, it is my will and desire that my grandchildren shall inherit as the representative or representatives of the parent thus deceased."

Mary G. Woodman died in 1870, Daniel Woodman in 1881 and Henrietta G. Woodman, March 8th, 1891. The Exchange Street property was not disposed of by the trustees, under their power of disposal, during the lives of the beneficiaries. Charles M. G. Woodman died February 27th, 1889, without issue, leaving a widow, the plaintiff.

The first question presented is, whether under this will and codicil, Charles took a vested or contingent remainder in one-fourth of the Exchange Street store and lot.

"A vested remainder is an estate to take effect after another estate for years, life or in tail, which is so limited that if that particular estate were to expire or end in any way at the present time, some certain person who was in esse and answered the description of the remainder-man during the continuance of the particular estate, would thereupon become entitled to the immediate possession irrespective of the concurrence of any collateral contingency. A remainder is contingent when it is so limited as to take effect to a person not in esse, or not ascertained, or upon an event which may never happen or may not happen until after the

determination of the particular estate." Am. & Eng. Encyl. of Law, Vol. 20, page 838.

Chancellor Kent says, that the following definition of a vested remainder, given by the Revised Statutes of New York, appears to be accurately and fully expressed: "When there is a person in being who would have an immediate right to the possession of the lands, upon the ceasing of the intermediate or precedent estate."
. . . . "It is the present capacity of taking effect in possession, if the possession were to become vacant, and not the certainty that the possession will become vacant before the estate limited in remainder determines, that distinguishes a vested from a contingent remainder." Kent's Commentaries, Vol. 4, page 303.

And in Washburn on Real Property, Book 2, c. 4, § 1, it is said: "The broad distinction between vested and contingent remainders is this: In the first, there is some person in esse known and ascertained, who, by the will or deed creating the estate, is to take and enjoy the estate upon the expiration of the existing particular estate, and whose right to such remainder no contingency can defeat. In the second, it depends upon the happening of a contingent event whether the estate limited as a remainder shall ever take effect at all. The event may either never happen, or it may not happen until after the particular estate upon which it depended shall have determined, so that the estate in remainder will never take effect."

An application of these definitions to the language of the will, answers the question presented. An estate for the lives of the husband and the daughter, or the survivor of them, was given by the will to the trustees. The remainder after the termination of the freehold estate was given in the proportions named to the sons, Moses and Charles, and the daughter, Susan, in fee. The remainder was so limited that it would take effect at once upon the termination of the prior estate. There were persons in being, definitely ascertained, during the continuance of the particular estate, who, upon the expiration of that estate at any time, were entitled to the immediate possession, irrespective of the concurrence of any collateral contingency. The will contains no language, such as is ordin-

arily used for the purpose of expressing an intention, that the vesting of the remainder was to depend upon a contingency—such as "if they are then living," or, "to such of them as may be living at the termination of the precedent estate." The devise was of a present fixed estate, the possession and enjoyment of which only were postponed until after the termination of the particular estate.

It is an elementary rule of construction, which has always been uniformly enforced, that no remainder will be construed to be contingent, which may consistently with the intention of the testator, be deemed vested.

We think that it was clearly the intention of the testatrix to create by her will a vested and not a contingent remainder in this property; and the language used was appropriate for this purpose, both upon principle and authority.

In *Leighton* v. *Leighton*, 58 Maine, 63, a testator devised all the residue of his property to his wife during her natural life, she not to make unnecessary strip or waste. The will proceeded as follows: "Second. After the death of my beloved wife, Jane, it is my will that my third son, Ruel S. Leighton, have all the property, both real and personal which may then remain." The court held that the clearly manifested intention of the testator was to give his wife a life estate, and to his son, Ruel, a vested remainder in fee simple; and that the son took a vested remainder, which upon his decease, during the lifetime of the widow, descended to his heirs.

In *Kennard* v. *Kennard*, 63 N. H. 303, a testator gave his property, consisting of both real estate and personal property, to his executors to be held by them in trust for the use and benefit of his wife during her life or widowhood, and at her decease or re-marriage to revert to his heirs. One of the heirs died before the termination of the trust estate and it was claimed that his interest in the share of his father's property never vested and did not pass by his will; but the court held that, as to the real estate, the limitation over by way of remainder created vested remainders. The court said: " The prior estate would terminate at all events upon the death of the life tenant, and the time for coming to the enjoyment

of the estate being fixed by an event certain, the right of enjoyment, by a person then in being, immediately upon the occurrence of the event and the termination of the prior estate, was established. It was not necessary to vesting the remainder, that Manning Kennard should survive the first taker. It is the present right of future enjoyment whenever the possession becomes vacant, and not the certainty that the possession will become vacant before the estate limited in remainder determines, that distinguishes a vested from a contingent remainder. When the event on which the preceding estate is limited must happen, and when also it may happen before the expiration of the estate limited in remainder, the remainder is vested."

In the case of *Blanchard* v. *Blanchard*, 1 Allen, 223, the limitation over came very much nearer to the dividing line between vested and contingent remainders. There a testator after devising to his wife all the income of his real and personal property during her natural life, devised to five of his children all the property that might be left at the death of his wife, to be divided equally between them; and the will further provided that if any of the five children died before his wife, then the property should be divided equally between the survivors. The court said: " The first clause of the devise to the children is certainly sufficient, if it stood alone, to create a vested remainder in all the children." The difficulty arose because of the proviso that in case any of the children should die before his wife, the property should be equally divided between the survivors, and it was argued with much force that this clause made the remainder contingent because it could not be told who the survivors might be. But the court held that each of the children named took a vested remainder in fee, subject to be divested upon a condition subsequent, with a limitation over on the happening of that condition. In the case under consideration, the devise of the remainder contains no such clause as gave rise to the difficulty in the case last cited.

In *Marsh* v. *Hoyt*, 161 Mass. 459, a testator, after making certain specific bequests, gave the rest of his property to trustees to pay the net income to his wife during her life. After her decease

a portion of the trust fund was still to be retained by the trustees and the net income thereof paid to her niece; "and, to take effect at her decease, I give, bequeath and devise said third part to her children in equal shares, to them, their heirs, executors, administrators and assigns forever." The court held that each of the four children of the niece took a vested interest in one-fourth of the trust estate, in which their mother had an equitable life estate, at the death of the testator.

The provision in the codicil, that "if either of my children die previous to my decease, it is my will and desire that my grandchildren shall inherit as the representative or representatives of the parent thus deceased," if it applies at all to the devise of the remainder in the Exchange Street store, in no way affects this question. None of the children of the testatrix died previous to her decease, consequently during all the continuance of the precedent estate there were persons in being, definitely ascertained, who upon the expiration of that estate became entitled to the immediate possession, irrespective of the concurrence of any collateral contingency. The language of this clause is equivalent to that in *Gibbens* v. *Gibbens*, 140 Mass. 102, in which the devise was, "at the decease of my wife, all my estate, real and personal, shall go to and be equally divided among my children, the issue of a deceased child standing in the place of the parent." The court held that the children of the testator took vested interests, and that the provision that the issue of a deceased child should stand in the place of the parent did not affect the question as to whether the remainder was vested or contingent.

But it is argued by the defense that in this case the remainder was contingent because it depended upon the exercise by the trustees of the power of sale given to them in the will; and several Massachusetts cases are cited in which there are expressions to the effect that where a life estate is created, with a power to sell and convey in fee, if necessary for the support of the life tenant, the remainder over is contingent on its not becoming necessary to exercise that power, and that this contingency makes the remainder contingent and not vested. *Johnson* v. *Battelle*, 125 Mass. 453;

*Bamforth* v. *Bamforth*, 123 Mass. 280; *Taft* v. *Taft*, 130 Mass. 461.

But in neither of these cases was this question necessarily raised. In *Johnson* v. *Battelle*, the question was as to the power of the life tenant to sell and convey in fee the property in which he had a life estate. In *Bamforth* v. *Bamforth*, the devise over was made contingent by the words, "should either of them be living." In *Taft* v. *Taft*, a bill was filed by the remainder-man against the life tenant to enjoin her from selling the real estate, and it was decided that the bill was not maintainable because the defendant was given by the will full control of the property, with a right to sell and dispose of the same during her life, "as she may think best."

Nor was this question necessarily raised in *Snow* v. *Snow*, 49 Maine, 159, in which this language was used by the court in the opinion: "It depended on two contingencies; one, whether anything would remain at the death or the marriage of his mother, and the other, whether he would ever attain the age of twenty-one years." In that case a testator bequeathed to his wife the use of his personal property during her life or widowhood, she to use what might be necessaay for her support, and after her decease or marriage, one-half of what remained to descend to his son, A, and the other half to his son, B, who was not to come into possession until he should arrive at the age of twenty-one years. The court held that B took only a contingent interest which lapsed upon his death before he had arrived at that age and during the life-time of his mother. The case was decided upon the ground that the time when the son B would be entitled to the possession of the property, was annexed to the legacy itself, and that therefore it was contingent upon his arriving at that age.

We think that according to principle and the weight of authority, a remainder is not made contingent by an uncertainty as to the amount of the property that may remain undisposed of at the expiration of the particular estate, the life-tenant having the power of disposal. Where an estate is devised to a person expressly for life, with a power of disposal qualified or unqualified,

the devisee takes an estate for life only. *Stuart* v. *Walker*, 72 Maine, 145.

In this case the qualified power of disposal given to the trustees, should it become necessary in order to perform the purposes of the trust, "after first using therefor the personal estate," did not enlarge the estate given to the trustees expressly limited to the lives of the beneficiaries.

The trustees took an estate for the lives of the beneficiaries, with a power of disposal if it should become necessary. The remainder over, upon the death of the testatrix, vested in her sons, Moses and Charles, and her daughter, Henrietta, of which they might have been divested by an execution by the trustees of their power of disposal, during the lives of the beneficiaries, according to the terms of the will.

In *Burleigh* v. *Clough*, 52 N. H. 267, a frequently cited case, a testator bequeathed to his wife the whole of his estate for life with the power of disposal, and what remained at her decease undisposed of by her he gave to D and his heirs and assigns forever. The court held that the widow took an estate for life with a power to defeat the remainder and that D took a vested remainder.

In *Ducker* v. *Burnham*, 146 Ill., 9, (37 Am. St. Rep. 135) a testator bequeathed and devised to his wife all the residue of his estate, real and personal, with full power "to use and exhaust such part of the principal of my estate real and personal, as she may at any time think necessary for her support and maintainance." By a subsequent clause in the will he directed that all of his property and estate remaining at the death of his wife be equally divided between his five children, share and share alike. The court held, in an exhaustive opinion in which many authorities are collected, that a power of sale added to a life estate does not raise the estate to a fee; that a remainder limited upon a life estate with a power of sale added, is not made contingent by the fact of its being uncertain whether such power will be actually exercised or not, and that the remainder given to the five children, after the termination of the life estate, was vested and not contingent.

The question was raised in *Heilman* v. *Heilman*, 129 Ind. 59, in

which the court said : "The remainder is not made contingent by uncertainty as to the amount of the estate remaining undisposed of at the expiration of the life estate, but by uncertainty as to the persons who are to take."

In *Welsh* v. *Woodbury*, 144 Mass. 542, decided subsequently to the Massachusetts cases above referred to, it is said : "The objection to the uncertainty of what will be the subject of the limitation over, which was once thought to be a further ground for the doctrine of *Kelley* v. *Meins*, as applied to personal property, seems to be discredited by the later English decisions cited in that case, and never has been applied to a life estate coupled with a power." From which it appears not improbable that, when the question arises, the Massachusetts court will hold that a remainder does not become contingent because of the uncertainty as to what will be the subject of the limitation over, notwithstanding the dicta in the former cases.

And finally in *Leighton* v. *Leighton*, supra, it was contended that the remainder was contingent because the life tenant had the power of disposal ; but this court, in considering that objection, simply said that in the cases relied upon in support of the contention, the testators expressly directed the sale of their real estate.

II.   Did this vested remainder in the Exchange Street property pass to the plaintiff under the will of her husband?

By his will Charles gave to his sister "all the right, title and interests, which I may have at the time of my decease," in and to the homestead of his late mother.   The second clause of the will is as follows: "All the rest, residue and remainder of my estate, real, personal and mixed, wherever found or situated, of which I may die seized or possessed, I give, devise and bequeath unto my beloved wife, Eliza Jane Woodman,—and being in lieu of dower,— to have and to hold the same to her, her heirs and assigns forever."

We think that this language clearly shows an intention upon the part of the testator to dispose of all of his property, and to give his wife all the residue of his estate, whether in possession or in remainder, and that appropriate language was used to carry out this

intention. A vested remainder is an estate which may be conveyed or devised. *Loring* v. *Carnes*, 148 Mass. 223. The person entitled to a vested remainder has an immediate fixed right to future enjoyment, which passes by deed. *Pearce* v. *Savage*, 45 Maine, 90.

The language of the will, "all the rest, residue and remainder of my estate, real, personal or mixed, wherever found or situated," could hardly be more comprehensive and expressive of an intention to include all property which the testator could devise. This vested remainder was a part of the residue of his estate. But it is argued that this language is limited by these words which follow, "of which I may die seized or possessed," and that the testator was neither seized nor possessed of any portion of the demanded premises at the time of his death. In support of this contention counsel rely upon the case of *Leach* v. *Jay*, 6 Chan. Div. 496, subsequently affirmed and reported in the 9 Chan. Div. 42.

In that case the devise under consideration was "all real estate (if any) of which I may die seized." The court held that the words "seized" had only a technical meaning, that it had no signification in ordinary language, and that as the testatrix had no seizin, either in law or in fact, of the real estate in controversy, nothing passed under the will to the devisee. The distinction between that case and this is very marked. Here the devise was not of "all the *real estate* of which I may die seized," but of all the residue of "my estate, real, personal and mixed, wherever found or situated, of which I may die seized or possessed." It was not limited to the *real estate* of which he might be seized at his death, but it included all his *estate* of which he might be possessed at that time. He was possessed of a vested remainder in one-fourth of the demanded premises, that was a part of his estate at the time of his death.

Our conclusion is, therefore, that by the will of Mary G. Woodman, her son, Charles took a vested remainder in one-fourth of the Exchange Street property, which he might devise by will before the termination of the precedent estate, and which he did devise to his wife, the plaintiff.

She is also entitled to one-fourth of the net rents and profits from March 8th, 1891, the time of the termination of the precedent estate, by the death of the survivor of the beneficiaries, to the date of the writ. This one-fourth is admitted to be $212.13.

The entry will be,

> *Judgment for plaintiff for the demanded premises,*
> *and for $212.13 rents and profits.*