In Equity.

LEONARD K. STORRS, TRUSTEE, *vs.* MARY MACKIE BURGESS et als.

Cumberland.    Opinion December 28, 1905.

*Wills. · Construction.   Intention of Testator.   Gift to a Class.*
*Contingent Remainder.*

The law favors the early vesting of an estate when such construction will not defeat the intent of the testator as expressed in the will.

It is a general rule in the construction of wills that where there are in a will no words importing a gift to a class as grandchildren, except in the direction to make division among them at a period subsequent to the testator's death, the members of that class are to be ascertained as of the time fixed for the division.

*Held:* That upon a consideration of the provisions of the will in the case at bar, the foregoing rule appears to exactly express the intention of the testator.

In equity.   On report.   Decree in accordance with opinion.

Bill in equity to obtain the construction of the last will and testament of the Right Reverend George Burgess, D. D., late of Gardiner, deceased, who was the first (Episcopal) Bishop of the Diocese of Maine. This cause came on for a hearing on bill and answer at the April term, 1905, of the Supreme Judicial Court, Cumberland County, and the presiding Justice, with the consent of the parties, ordered the same to be reported to the Law Court for determination.

The case appears in the opinion.

## WILL OF GEORGE BURGESS.

"In the name of God. Amen. I, George Burgess, of Gardiner, in the County of Kennebec, in the State of Maine, being in health and in the possession, through God's mercy, of all my powers, but deeply conscious of my own frailty, and mindful of my liability to sudden removal, do make this my last will and testament, revoking, and intending to destroy, all previous instruments of the same kind, though substantially identical herewith.

I commend my soul to the precious mercies of Almighty God, my heavenly Father, through our Lord Jesus Christ; beseeching him that, all my sins being washed away by the blood of the Lamb, and my whole spirit sanctified by the Holy Ghost, I may, unworthy as I am, be admitted by grace to the society of just men made perfect.

Of my worldly estate, I give and bequeath the sum of Seven Thousand Dollars, being nearly that part of it which was not inherited from my father, to the Trustees of the Fund for the support of the Episcopate of the Diocese of Maine; to be duly invested, and the income thereof to be applied to the support of future Bishops of the said Diocese; and in the event of its division, to the support of that Bishop within whose Diocese the City of Gardiner may fall.

The remainder of my property, real and personal, I give and bequeath as follows.

I desire my dear brothers, Frederick Burgess and Alexander Burgess, to act as Trustees under my will; and it is my wish that no bonds should be required of them for the faithful execution of their trust.

I appoint my dear brother, Alexander Burgess, Executor of this my will, and desire that no bonds may be required of him; and I give and bequeath unto him all my theological books, except any which my dear wife may desire to retain.

I give and bequeath to my dear wife, Sophia Kip Burgess, all other things in my house.

I give the residue of my estate, real and personal, in trust, to my said brothers, Frederick Burgess and Alexander Burgess, with

authority to sell, change and reinvest the same at their discretion; and I hereby appoint that they shall hold the same in trust for my dear wife, and for my beloved daughter, Mary Georgiana Burgess, as follows;

The whole income to be paid to my dear wife, if she should survive and remain unmarried, till my daughter shall attain the age of twenty-five; and should my daughter be removed by death before that age and without being married; then the whole income to be paid to my dear wife throughout her own lifetime:

When my daughter shall attain the age of twenty-five, the half of the income to be paid to her; and also to be held in trust for her and used for her benefit, should my dear wife at any time previous to her attainment of that age, be herself married a second time;

Should my dear wife die before my daughter attains the age of twenty-five, the whole income to be held in trust for my daughter, and used in her behalf, till she attains that age; and then, to be transferred to her with the whole estate, and the Trust to cease;

Should my dear daughter be married and depart this life before the age of twenty-five, leaving issue, then at her death the half of the estate hereby bequeathed to the said Trustees to become vested in such issue, if my dear wife should still be living; and if not, the whole to pass to such issue and the trust to cease;

Should my dear daughter, married or unmarried, attain the age of twenty-five, half the income to be paid to her, and half to her mother, till the death of the one or the other; and then, and thereupon;

Should my daughter survive her mother, the whole estate to vest in her, and the Trust to cease; and

Should my dear wife survive our daughter, she dying without issue, the whole income to be paid to my dear wife during her lifetime, and at her death, the estate to be divided into two equal parts;

GEORGE BURGESS, [L.S.]

one of which shall be transferred to such charitable or religious purposes as she may direct, or, if she make no direction, then to the

Trustees aforesaid of the Fund for the support of the Episcopate of the Diocese of Maine, to constitute a fund for the assistance of missionaries and other clergymen of the said Diocese, and to be applied under the direction of the Bishop and Standing Committee, especially for the relief of sick, infirm or aged clergymen in the said State, without regard to any division of the Diocese; and the other half to be divided equally amongst the grandchildren of my deceased father;

Should my dear wife survive our daughter, she leaving issue, then at the death of my wife, the remaining half of the estate to pass to such issue, and the Trust to cease.

In witness whereof, I have hereunto set my hand and seal, this eighth day of January in the year of our Lord one thousand eight hundred and sixty-one; and also to another sheet, prefixed hereto, and forming a part of the same will and testament. Signed, sealed and published and declared as his last will and testament, by George Burgess, in our presence, who, in his presence, and in the presence of one another, have subscribed our names.

GEORGE BURGESS [L.S.]

ROBERT WILLIAMSON
W E S WHITMAN
CHS DANFORTH

I hereby append the following provision as a codicil to my last will and testament.

It is my will that the house and land which I occupy at Gardiner should be a part of the legacy of Seven Thousand Dollars which I have bequeathed for the benefit of the Diocese, and should be estimated at not less than Four Thousand Dollars in making up the same; but that it should not be transferred, but should be the property of my wife, and, in the event of her decease, of my daughter, so long as either of them shall continue to occupy it as a residence. It is also my will that the mortgage to me from Emma J. Lord, if unpaid at the time of my decease, should be included in the said legacy, as a part of the payment of the same.

In witness whereof, I have hereunto set my hand and seal, this

twelfth day of March, in the year of our Lord one thousand eight hundred and sixty four

Signed and sealed, and declared to be a

codicil to his last will and testament,

by George Burgess, in presence of us,          GEORGE BURGESS (L.S.)

who at his request, in his presence and

in the presence of each other, have

subscribed our names as witnesses thereto"

DANIEL NUTTING

WILLIAM COOPER

NATHAN B. NORTON.

*Aaron H. Latham and Bird & Bradley,* for plaintiff.

*H. Charles Royce* of the Vermont Bar, for *Mary Mackie Burgess et als.,* defendants.

*Anthoine & Talbot, for Henry R. Storrs et als.,* defendants.

SITTING: STROUT, SAVAGE, POWERS, PEABODY, SPEAR, JJ.

POWERS, J.    Bill to obtain the construction of the last will and testament of George Burgess, late of Gardiner. The will was executed Jan. 8, 1861, and the testator died April 23, 1866. After providing for the payment of certain legacies the will contained the following paragraphs in relation to the residue of his estate : "I give the residue of my estate, real and personal, in trust to my said brothers, Frederick Burgess and Alexander Burgess, with authority to sell, change and reinvest the same at their discretion; and I hereby appoint that they shall hold the same in trust for my dear wife and for my beloved daughter, Mary Georgiana Burgess, as follows: The whole income to be paid to my dear wife, if she should survive and remain unmarried, till my daughter shall attain the age of twenty-five; and should my daughter be removed by death before that age and without being married; then the whole income to be paid to my dear wife throughout her own lifetime.

When my daughter shall attain the age of twenty-five, the half of the income to be paid to her; and also to be held in trust for her and

used for her benefit, should my dear wife any time previous to her attainment of that age, be herself married a second time;

Should my dear wife die before my daughter attains the age of twenty-five, the whole income to be paid in trust for my daughter, and used in her behalf, till she attains that age; and then, to be transferred to her with her whole estate, and the Trust to cease;

Should my dear daughter be married and depart this life before the age of twenty-five, leaving issue, then at her death the half of the estate hereby bequeathed to the said Trustee to become vested in such issue, if my dear wife should still be living; and if not, the whole to pass to such issue and the Trust to cease.

Should my dear daughter, married or unmarried, attain the age of twenty five, half the income to be paid to her, and half to her mother, till the death of the one or the other; and then and thereupon

Should my daughter survive her mother, the whole estate to vest in her, and the Trust to cease; and

Should my dear wife survive our daughter, she dying without issue, the whole income to be paid to my dear wife during her lifetime, and at her death, the estate to be divided into two equal parts; one of which shall be transferred to such charitable or religious purposes as she may direct, or, if she make no direction, then to the Trustees aforesaid of the Fund for the support of the Episcopate of the Diocese of Maine, to constitute a fund for the assistance of missionaries and other clergymen of the said diocese, and to be applied under the direction of the Bishop and Standing Committee, especially for the relief of the sick, infirm or aged clergymen in the said State, without regard to any division of the diocese; and the other half to be divided equally amongst the grandchildren of my deceased father;

Should my dear wife survive our daughter, she leaving issue, then at the death of my wife, the remaining half of the estate to pass to such issue and the Trust to cease."

Mary Georgiana Burgess died May 1, 1873, before reaching the age of twenty-five years and without issue. Sophia K. Burgess died

July 7, 1904, never having remarried, leaving a will which has been duly probated containing the following paragraph :

" Whereas by the last will of my husband I am authorized, in the event which has happened of the death without issue and before me of my daughter, to dispose for such charitable or religious purposes as I may direct of one half of the trust fund by his said will established, now therefore, I hereby direct that said one-half of said trust fund shall be transferred and paid over to the Trustees of Diocesan Funds in the Diocese of Maine, a corporation organized under the laws of the State of Maine, to be held by it for the purposes of the Burgess-Neely Endowment or Memorial Fund."

At the time of the testator's death there were fifteen living grandchildren of his deceased father. At the time of the daughter's death thirteen of these were living and one additional grandchild, Christina Burgess Royce had been born. Upon the death of the wife there were eight living grandchildren of the deceased father of the testator of whom said Christina Burgess Royce was one.

The following questions are asked of the court :

" First. Shall the Trustee pay over one half of the Trust Fund to the Trustees of the Diocesan Funds in the Diocese of Maine ?

Second. Shall the trustee pay over one half of the trust fund to the grandchildren of Thomas Burgess, the deceased father of the testator, who were living at the time of the death of the testator April 23, 1866, and to the legal representatives of such of said grandchildren as have since deceased, and if so, in what proportions, per stirpes or per capita ?

Third. Shall the trustee pay over one half of the trust fund to the grandchildren of Thomas Burgess, the deceased father of the testator, who were living at the time of the death of Mary Georgiana Burgess, May 1, 1873, and to the legal representatives of such said grandchildren as have since deceased, and if so, in what proportions, per stirpes or per capita ?

Fourth. Shall the trustee pay over one-half of the trust fund to the grandchildren of Thomas Burgess, the deceased father of the testator, who were living at the time of the death of Sophia K.

Burgess, July 7, 1904, and if so, in what proportions, per stirpes or per capita?"

It will be seen from the facts above stated that of the many contingencies provided for in the will only one happened viz: The death of the testator's daughter without issue before the death of his wife. It is therefore with the construction of only the next to the last paragraph above quoted from his will that we have to do, the other parts of the will being of importance simply as they may help to reveal the intention of the testator and thus throw light upon that part a construction of which is sought.

If Sophia K. Burgess survived her daughter, she dying without issue, then at the death of said Sophia the estate was to be divided in two equal parts one of which was to be transferred to such charitable or religious purposes as she might direct. This gave her a power of testamentary disposition over one-half of the estate subject only to the limitation that it must be exercised for charitable or religious purposes. The disposition of this part of the estate in her will was in strict conformity to the power conferred, and the first question is answered in the affirmative.

The gift of the other half of the estate is to a class, and the answer to the remaining questions depends upon the time at which the class is to be ascertained. Many general rules of construction are invoked; that the law favors the early vesting of estates; that the will speaks from the death of the testator; and that in case of contingent remainders the estate vests upon the happening of the contingency. The estate bequeathed to the grandchildren was a contingent remainder, and its vesting was suspended until the happening of the contingency. The law favors the early vesting of the estate when such construction will not defeat the intent of the testator as expressed in the will. In this case a contrary intention is shown. By the terms of the will if the testator's wife died before his daughter attained the age of twenty-five, then upon his daughter arriving at that age the whole estate was to be transferred to her and the trust to cease. Again if the daughter died before the age of twenty-five leaving issue, then at her death one-half, and if the wife was not living, the whole of the estate was to vest in such

issue and the trust to cease. Still again if the daughter survived the mother the whole estate was to vest in her and the trust to cease. In any of these contingencies the grandchildren of the testator's deceased father received nothing. A remainder is contingent when so limited as to take effect upon an event which may never happen. *Woodman* v. *Hall,* 89 Maine, 128 ; *Hunt* v. *Hall,* 37 Maine, 363. The only event in which the grandchildren were to share in the fund was in case the testator's daughter died before attaining the age of twenty-five without issue and his wife survived her. This event might never happen and the remainder was contingent. The estate did not vest therefore in the grandchildren at the testator's decease. It was the death of the testator's daughter, under the conditions just named, which first made it certain that any part of the estate would come to the grandchildren.

These rules invoked must be considered with reference to this particular will. What does the will say and what is the testator's intention expressed in the will? It is at the death of the testator's wife that the estate is to be divided and one-half of it to be distributed among the grandchildren of his deceased father. The testator must have had in mind those who answered to that description at the time of the distribution. He was speaking of the grandchildren of his deceased father not at the time of his own death, not at the time of the death of his daughter, but at the time of his wife's death. "At her death" he says the division is to be made. There are in the will no words importing a gift to his father's grandchildren, except in the direction to make the division among them at the time of his wife's death. His language must refer to that time, the time when the division is to be made. Nowhere in the will is any mention made of the heirs or legal representatives of such grandchildren, nor are they themselves named even as a class, except in the direction to divide one-half the estate among them after the death of both his daughter and his wife. If the estate vested at the death of the daughter before arriving at the age of twenty-five without issue her mother surviving her, then the estate so vesting was not only heritable but transmissible and devisable. It might happen thus that a large portion of the estate would at the time of the division go not to the

grandchildren of the testator's father but to their husbands or wives or devisees, strangers in blood to both the testator and his father. We find nothing in the will to lead us to infer that such a result was within the contemplation of the testator or ever intended by him. The conclusion is strengthened by the fact that while the will contains careful provision for the testamentary disposition of one-half of the estate by the testator's wife before the division of the estate, no such power is given to the grandchildren.

"When a legacy is made to a class as "grandchildren," and there is by the will a postponement of the division of the legacy until a period subsequent to the testator's death, everyone who answers the description, so as to come within that class at the time fixed for the division, is entitled to share, but no others. By this rule the heirs of a grandchild, who was living at the death of the testator but who died before the time fixed for distribution, will take nothing; but an after-born grandchild if living at the time of the distribution, will share," *Webber* v. *Jones*, 94 Maine, 429. There is nothing in the will under consideration to show a contrary intention. In fact the rule laid down in *Webber* v. *Jones* seems to exactly express the testator's intention in this case.

In *Hale* v. *Hobson*, 167 Mass. 399, it is said: "The testator provides for his widow and children and grandchildren, and gives various legacies and life annuities, and then, contemplating that a portion of his estate remains undisposed of, and looking forward to the time when the last life annuity shall have ceased and the residue be free for distribution, he directs his trustees then to divide the residue and remainder with its accumulated interest equally among his grandchildren. What grandchildren? It seems to us more reasonable to suppose that the grandchildren living at the time of the distribution are intended than the grandchildren living at his death. It is true that there are no words of survivorship, but it is as if the testator took his stand at the time of the death of the last life annuitant, and said: "I direct the remainder and its accumulations to be divided amongst my grandchildren," in which case no words of survivorship would be necessary, and those living then would take." This language is used in *Eager* v. *Whitney*, 163 Mass. 463. "There is no

gift to the legal representatives, independently of the direction to the trustees to pay over to them in the year 1901. The time is thus annexed to the gift. It is a legacy given as of that year. An arbitrary date is fixed, at which the trust is to end and the property to be paid over. The form of the expression used may not be necessarily conclusive, but it has a tendency to show that the gift was to those who should then be his legal representatives." See also In re Brown's estate, 86 Maine, 572; *Clark* v. *Cammann*, 160 N. Y. 315; Matter of Baer, 147 N. Y. 348; Matter of Crane, 164 N. Y. 71; *McLain* v. *Howald*, 120 Mich. 274; *Jones* v. *Colbeck*, 8 Ves. Jr. 38; *Michell* v. *Mitchell*, 73 Conn. 303; *Clark* v. *Shawen*, 190 Ill. 47. We therefore answer the second and third questions in the negative.

The will provides that the division shall be among the grandchildren equally. In answer to the fourth question the trustee is directed to pay over one-half of the trust fund to the grandchildren of Thomas Burgess the deceased father of the testator, who were living at the time of the death of Sophia K. Burgess, July 7, 1904, and such division among them is to be made per capita.

Costs including reasonable counsel fees to be paid all parties by the trustee and charged in his account.

*Decree accordingly.*