In  Equity.

Moses Giddings et al., Trustees,

*vs.*

Elizabeth Gillingham, Admx., et als.

Penobscot.   Opinion December 5, 1911.

*Wills.   Construction.   Contingent Remainder.   Vested Remainder.   Bequests.
Lapsed Legacies.   Identity of Beneficiary.*

Vested and contingent remainders are distinguishable, in that in the first there is some person in esse, known and ascertained, who, by the will or deed creating the estate, is to take and enjoy the estate on expiration of the particular estate, and whose right to such remainder no contingency can defeat; while a contingent remainder depends upon the happening of a contingent event, whether the estate limited as a remainder shall ever take effect at all.

A will, after providing for the testator's widow during her life, directed that his property be placed in the hands of trustees, and that on the death of the widow the residue of the estate should be disposed of according to several clauses, specifying persons and institutions to whom payment should be made, and the respective amounts thereof.   *Held*, that such clauses created contingent and not vested remainders.

A bequest, to be paid over as directed by testator's wife lapsed through her failure to exercise the power of disposition.

Legacies, payable on termination of a life estate, lapsed on death of the beneficiaries before termination of the life estate; the bequests being contingent.

A bequest to the "Baptist Theological Seminary situate in Newton" is good as a bequest to the "Newton Theological Institution; " that appearing to be the institution intended.

A bequest to the "Baptist Missionary Union of Foreign Missions" is good as a bequest to the "American Baptist Foreign Mission Society; " that appearing to be the society intended as beneficiary.

In equity.   On report.   Decree according to opinion.

Bill in equity brought by Moses Giddings and Franklin A. Wilson, surviving trustees under the will of Chapin Humphrey, late of Bangor, Maine, deceased testate, against Elizabeth B. Gillingham,

administratrix de bonis non with the will annexed of the estate of Marcia Humphrey, David G. F. Ward, Mabel T. Ward Saltus, John B. Ward, Ralph L. Ward, George F. Maxfield, James L. Gillingham surviving executors under the Will of Dana B. Humphrey, Dana B. Pratt, Elizabeth B. Gillingham, Elliott W. Crowell, administrator of the estate of Harriet Crowell, the Children's Home of Bangor, the First Baptist Church of Bangor, the Newton Theological Institution, the American Baptist Foreign Mission Society, the Maine Baptist Missionary Convention, the Maine Baptist Education Society and Arthur H. Isbell, to obtain a judicial construction of the will of the said Chapin Humphrey. Answers were filed by several of the defendants. The cause was heard by the Justice of the first instance, on bill, answers and proofs, and at the conclusion of the evidence the case was reported to the Law Court for determination.

The case is stated in the opinion.

*John Wilson*, for plaintiffs.

*Charles H. Bartlett*, for the Children's Home of Bangor.

*Allen E. Rogers*, for Newton Theological Institution, American Baptist Foreign Mission Society, Maine Baptist Missionary Convention, Maine Baptist Education Society, The First Baptist Church of Bangor.

*James L. Gillingham*, for Elizabeth B. Gillingham, administratrix, and James L. Gillingham, surviving executor.

*Hugh R. Chaplin*, for George F. Maxfield, Mabel T. Ward Saltus and Ralph L. Ward.

SITTING: WHITEHOUSE, C. J., SAVAGE, SPEAR, CORNISH, KING, HALEY, JJ.

CORNISH, J. This is a bill in equity brought by surviving trustees to obtain a judicial construction of the will of Chapin Humphrey, who died in Bangor, November 30, 1874, leaving a widow, Lucy L. Humphrey and certain collateral kindred but no children. The will, which is voluminous and apparently drawn with great care, is dated May 21, 1870, and was duly probated in December, 1874.

Seven questions are propounded to the court but the answer to five involves a single issue, namely, whether the clauses giving rise to those questions created vested or contingent remainders. In order to comprehend the situation more intelligently, it is necessary to give a brief abstract of the provisions of the entire will, because the true construction must depend upon the intention of the testator and that must be gathered not from single or scattered paragraphs but from the whole instrument.

In the first paragraph the wife was given a life estate in the homestead with the income from an adjoining tenement and in case she desired to move to some other place, the trustees were authorized and instructed either to purchase for her another house at a cost not exceeding $20,000, or at her option to lease one at a rental not exceeding sixteen hundred dollars per year.

In the second paragraph the wife was given all the household furnishings and equipment of every kind.

By the third paragraph all the residue of the estate both real and personal was bequeathed and devised to Lucy L. Humphrey, Moses Giddings and Samuel Garnsey, trustees, to have and to hold the same in trust for the following uses and purposes, stated in an abbreviated form.

First. To pay to the First Baptist Society of Bangor, the sum of one hundred dollars per year during the lifetime of his wife, for the rent of the family pew.

Second. To pay to his unmarried sister Marcia Humphrey, an annuity of five hundred dollars during the lifetime of his wife.

Third. To pay to his wife an annuity of three thousand dollars.

Fourth. To pay at the decease of his wife and after the probate of her will the sum of twenty thousand dollars to such persons or institutions, if any, as she might designate in her will.

Then follow these words: "The main object of this will is to provide, first, for the maintenance and support of my wife in the same style and manner that she may be living in at the time of my decease."

This marks the end of what might be appropriately designated as the first division of the will. It relates to what is to be done by the

trustees during the lifetime of the wife and is concerned almost wholly with provisions for the comfort and maintenance of her who was, as he himself states, the immediate object of his solicitude and the recipient of his bounty.

Then begins the second division of the will, prescribing what shall be done with his estate when the life estate is ended, and introduced by these words:

"On the decease of my wife Lucy L. Humphrey, I direct the following disposition of the residue of my estate by my executors or administrators and the trustees under this will."

Then follow thirteen clauses marked A to M inclusive, specifying various persons and institutions to whom payments shall be made and the amount to each.

It is the construction of certain of these clauses, which will be considered seriatim hereafter, that the court is called upon to determine. Did they create a vested or contingent estate in the several remaindermen? In other words, did these remaindermen take an interest which vested at the death of the testator, the right of enjoyment being simply postponed, or was the vesting of the title itself postponed until the termination of the prior estate subsisting in the trustees during the life of the wife.

A careful examination of the entire instrument leads to the conclusion that it was clearly the intention of the testator to create by his will contingent and not vested remainders and the language was appropriate for this purpose both upon principle and authority. In reaching this conclusion we have not overlooked the familiar and oft quoted rule that remainders shall be deemed to be vested rather than contingent, if they can properly be so construed. *Woodman* v. *Woodman*, 89 Maine, 128. But this rule like all others evolved for the construction of wills is plastic and is designed to aid rather than to hinder in the correct determination of the one controlling factor, the intent of the testator. The general scope and purpose as well as the particular language of each instrument, viewed in the light of the circumstances known to the testator, are superior to all arbitrary rules. *Weston* v. *Weston*, 125 Mass. 268, 270; *Heard* v. *Reed*, 169 Mass. 216, 223; *Webber* v. *Jones*, 94 Maine, 429, 432.

It would be unprofitable to quote from or even to cite an ever increasing line of authorities stating in varying language the distinction between vested and contingent remainders. It is sufficient to restate the comprehensive, definition found in *Woodman* v. *Woodman*, 89 Maine, 128, adopting the language in Washburn Real Prop. Vol. 2, ch. 4, sec. 1, viz:

"The broad distinction between vested and contingent remainders is this: In the first, there is some person in esse known and ascertained, who, by the will or deed creating the estate, is to take and enjoy the estate upon the expiration of the existing particular estate, and whose right to such remainder no contingency can defeat. In the second, it depends upon the happening of a contingent event whether the estate limited as a remainder shall ever take effect at all. The event may either never happen, or it may not happen until after the particular estate upon which it depended shall have determined, so that the estate in remainder will never take effect."

With this definition in mind, the reasons that have led the court to find the several bequests in the will under consideration to be contingent rather than vested, are based both upon the general scope and purpose of the will and also upon the particular language of the several bequests.

In considering the general scope and purpose of the instrument it will be found:

1. That the clear purpose of the testator was to have his estate converted into a single trust fund and that it should continue a unit during the life of his wife. Not only does he bequeath and devise the full legal estate both of real and personal property into the hands of his trustees, but he specifically provides for the segregation of his varied interests in these words:

"I direct that all my real estate, excepting said homestead and tenement adjoining, shall be sold at as early a day as is consistent with the interest of my estate, and that all my personal estate shall be sold at its market value, and all notes and other evidences of debt due me, shall be converted into money, and the proceeds thereof, together with all other receipts of money and incomes be invested in good dividend paying securities until the decease of my said wife Lucy L. Humphrey."

In his general scheme for the disposition of his property, which he had worked out carefully, the first step consisted in its reasonably prompt conversion by his trustees into a fund composed of safe dividend paying securities.

2.   That during the life of his wife, this entire fund with the exception of the annuity of one hundred dollars to his church and of five hundred dollars to his sister Marcia, was to be so managed as to yield an income of three thousand dollars per year for her support, and in another clause it is expressly provided that in case the net income is not sufficient to pay all these annuities in full, the trustees shall sell such of his effects and property as they deem necessary to pay the same.   The prime motive existing in his mind was an ample provision for his wife's comfort, and both principal and income could be devoted to that purpose.   That was the second step in his general plan, and as he himself says, that was the main and primary object of his will.

3.   That at the decease of his wife, this trust fund with all its accumulations and deductions was to be broken up and was to be disposed of by the trustees as specified in items A to M, inclusive. The language is significant.

"On the decease of my wife, Lucy L. Humphrey, I direct the following disposition of the residue of my estate by my executors or administrators and the trustees under this will," and then follow the payments to be made by them.   The "disposition" is not made by the testator at the time of his death, but is to be made by his legal representatives after the decease of his wife.   Nowhere in the will is there a gift or bequest to these legatees independent of the direction to his executors or trustees to pay them at a future time.   The gift, therefore, implied from the direction to pay, speaks as of the time of payment and not as of the date of the testator's death.   The courts have always held that the fact that there are no words of present gift has great weight in indicating that the testator intended that the title should not vest until the period of distribution should arrive, and that the bequest should be contingent until that time.   *Peck* v. *Carlton,* 154 Mass. 231; *Eager* v. *Whitney,* 163 Mass. 463; *Hale* v. *Hobson,* 167 Mass. 397; *Crapo* v. *Price,* 190 Mass. 317;

30 Am. & Eng. Ency. of Law, 2nd Ed. page 771. "One of the subordinate rules is that when the only gift is found in the direction to pay or distribute at a future time, the gift is future and not immediate, contingent but not vested. Its reason is plain. The direction has no reference to the present and can be executed only in the future, and if in the meantime the donee shall die the direction cannot be exercised at all." *Dougherty* v. *Thompson*, 167 N. Y. 472, 60 N. E. 760.

4.   That some of the legatees in remainder could not be ascertained until after the termination of the life estate, as for instance, under items A, D and E, and this fact has been regarded by the courts as having a tendency to show that all the remaindermen must be ascertained at that time and that the testator regarded all the remainders in the same category and as contingent. *Smith* v. *Rice*, 130 Mass. 441, *Crapo* v. *Price*, 190 Mass. 317, 322.

5.   That the amount to be paid to four of the legatees was made contingent upon the total of the estate at the time of payment, because the will provides that if the estate is insufficient at that time for the payment of all the items A to M then the trustees are directed to pay the first nine in full and to distribute the balance among the last four pro rata.

6.   That in case the estate should "prove to exceed" that is, on the final reckoning, the amount disposed of under the provisions of the will, such excess was bequeathed under the residuary clause. So that if any of the contingent legacies lapsed they fall into this residuum and need not be administered upon as intestate property.

These various reasons lead the court in this case to the conclusion before stated as the same or similar reasons have led to the same conclusion in prior cases. *Hunt* v. *Hall*, 37 Maine, 363; *Reed* v. *Fogg*, 60 Maine, 479; *Spear* v. *Fogg*, 87 Maine, 132; *Hopkins* v. *Keazer*, 89 Maine, 347; *Robinson* v. *Palmer*, 90 Maine, 246; *Webber* v. *Jones*, 94 Maine, 429; *Storrs* v. *Burgess*, 101 Maine, 26.

Passing now from general considerations, and taking up the separate items, we find that the reasons for holding the remainders to be contingent are strengthened.

"A.    Said sum of Twenty Thousand Dollars ($20,000) shall be paid over as directed by my said wife, Lucy as directed in clause "Fourth" on the 3rd page of this Will."

This bequest was contingent upon the wife's exercising the power to dispose of the same by will.    This she failed to do, and therefore this bequest, admittedly contingent, lapsed.

"B.    The sum of Ten Thousand Dollars ($10,000) shall be paid to my sister, the aforesaid Marcia Humphrey."

This sister died after the death of the testator and before that of his wife.    If her interest in that sum was vested it passed to her estate, otherwise it lapsed.    In the opinion of the court for the reasons before given in considering the will as a whole, the interest was contingent upon her surviving the widow.    It should further be borne in mind that this sister was provided for during the lifetime of the wife by an annuity of five hundred dollars.    At the widow's decease or at her own decease, during the lifetime of the widow, that annuity stopped.    This bequest was evidently made to take the place of the annuity in case the sister survived the wife.    Interest at five per cent on the ten thousand dollars would be substituted for the annuity of equal amount.    If living at the wife's decease, she would receive the legacy.    If not, it would lapse, and the bequest means exactly what it says, the amount is to be paid to the sister personally, the same as if the words "if living" were added, and not to her heirs or legatees.    Had the testator wished it paid to others he easily could and doubtless would have so provided.    The answer to the first question must therefore be, that this legacy should not be paid to the administratrix of Marcia Humphrey, but forms a part of the estate to be disposed of under the last six items, H to M inclusive, and, if there is an excess, then to be disposed of under the residuary clause.

"C.    The sum of Five Thousand Dollars ($5,000) shall be paid to Cordelia, wife of my brother, Isaac B. Humphrey."

Cordelia died subsequent to the death of the testator and before that of his wife.    For reasons already stated, we hold this to have been a contingent estate.    It might be added that this also was evidently to be a personal gift to Cordelia if living, but with no

intention that if she had deceased it should pass to her children because they are specifically provided for in the next item. The answer to the second question must therefore be that this legacy is not payable to the grandchildren of Cordelia, but must be disposed of in the same manner as the lapsed legacy to Marcia, under Item B.

"D. The sum of One Thousand Dollars ($1000) shall be paid to each of the children of my brother, Isaac B. and his wife, Cordelia Humphrey."

This comes directly under the decision of this court in *Storrs* v. *Burgess*, 101 Maine, 26, and cases cited, holding that where there are no words in a will importing a gift to a class, as children or grandchildren, except in the direction to make a division among them at a period subsequent to the testator's death, the interest is contingent and the members of that class are to be ascertained as of the time fixed for the division. The payment to each child means to each child surviving at time of payment. There is no mention of their heirs or descendants, and the only persons entitled to take would be the surviving children. It is a legacy to them as of the time of distribution. Here all the children had died prior to the termination of the life estate and there is no one to take the legacy. The answer to the third question therefore is that the sum mentioned in this item is payable neither to the lineal descendants nor heirs of the deceased children, but must be disposed of in the same manner as the lapsed legacy in Item B.

"E. The sum of One Thousand Dollars ($1,000) shall be paid to each of the children of my late sister, Angelia Pratt."

The children surviving at the termination of the life estate were Elizabeth B. Gillingham and Dana B. Pratt and to them payment should be made. Concerning this no question is raised.

"F. Five Thousand Dollars ($5,000) shall be paid to my brother, Dana B. Humphrey."

This legatee having died, the legacy lapsed for reasons already stated and payment should be made as specified under Item B. This is in answer to question number four.

"G. One Thousand Dollars ($1,000) shall be paid to my niece, Mrs. Harriet Crowell."

The record shows the fact but not the date of the death of Harriet Crowell. If this occurred subsequent to the termination of the life estate, payment should be made to the administrator of her estate, otherwise the legacy lapsed and payment should be made as specified under Item B. This is in answer to question number five.

Two questions remain, which involve simply the sufficiency of designation of the legatee, viz :

"J. Ten Thousand Dollars ($10,000) shall be paid to the Baptist Theological Seminary situate in Newton, in the Commonwealth of Massachusetts, for the endowment of a Professorship of Elocution."

The correct corporate name of the legatee is the Newton Theological Institution. Although the name is not stated in the will with precision, it is not claimed that any other institution was intended, and therefore payment should be made as intended. *Preachers Aid Soc.* v. *Rich,* 45 Maine, 552.

"K. Ten Thousand Dollars ($10,000) shall be paid to the Baptist Missionary Union of Foreign Missions."

The correct corporate name of this legatee is the American Baptist Foreign Mission Society, and for the reasons stated above, payment should be made to that corporation.

The legatees in their answers unite with the trustees in asking for a judicial construction of the will. The questions raised might well give rise to doubts. It is therefore proper that costs, including reasonable counsel fees, should be allowed the parties, paid by the trustees and charged in their probate account.

*Decree accordingly.*