UNITED STATES TRUST COMPANY OF NEW YORK
*Executor of the Will of*
HENRY BEAMAN DOUGLASS
*vs.*
MINNIE M. DOUGLASS
ROBERT F. DOUGLASS
HELEN BOSHKOFF
JEAN YEOMANS
SARAH M. CRONE
ALICE DOUGLASS GRAVES
ROBERT F. DOUGLASS, JR.
MARSHALL W. DOUGLASS
YALE UNIVERSITY
NEW YORK ACADEMY OF MEDICINE
COLLEGE OF PHYSICIANS AND SURGEONS, COLUMBIA UNIVERSITY
COLUMBIA UNIVERSITY
CHILDREN, NOT DETERMINED OF ROBERT F. DOUGLASS

Lincoln.   Opinion, January 16, 1948.

*Hutchinson, Pierce, Atwood & Scribner,* for plaintiff.

*Francis P. Freeman,* for Minnie M. Douglass.

*Verrill, Dana, Walker, Philbrick &*
*Whitehouse,*
*Edward T. Gignoux,* for Alice Douglass Graves, Robert
  F. Douglass, Robert F. Douglass, Jr., and Marshall W.
  Douglass.

*Woodman, Skelton,*
*Thompson & Chapman,* for Helen D. Boshkoff.

*Drummond & Drummond,*
*William B. Mahoney,*
*Carl Beyer,* for New York Academy of Medicine, College
  of Physicians and Surgeons of the Medical Depart-
  ment of Columbia University, Columbia University.

*Porter Thompson,* guardian *ad litem* of children not de-
  termined.

SITTING: STURGIS, C. J., MURCHIE, TOMPKINS, FELLOWS, MURRAY, JJ.

FELLOWS, J. This case is before the Law Court on report. The action is a Bill in Equity brought by the United States Trust Company of New York, as executor, for the construction of the last will and testament of Henry Beaman Douglass, late of Boothbay, Maine. The will is dated May 24, 1933. The codicil is dated November 24, 1933. The testator died December 5, 1946. The will was proved and allowed in the Probate Court for Lincoln County on February 4, 1947.

The testator had no children, but at the time of his death he had a wife, Minnie M. Douglass, and the seven relatives, who are named respondents in this Bill in Equity viz: a brother, five nieces and nephews, and one cousin.

The widow, Minnie M. Douglass, on February 4, 1947, elected to waive the provisions of the will in accordance with R. S. 1944, Chap. 156, Secs. 13, 14, and took the share to which she is entitled by law.

In his will, the testator, after mentioning his desired disposition of books, surgical instruments, household furnishings and other personalty, and $10,000 to Yale University to establish a scholarship fund, provides in the fifth paragraph of his will that the *residuum* shall be held

> "in trust, nevertheless, during the life of my said wife, to invest and reinvest the same and to pay to my said wife out of the entire net income arising therefrom, semiannually or oftener in the discretion of my trustees, at the rate of six thousand (6,000) dollars a year, and certain additional amounts in the contingencies hereinafter specified, and to pay the remainder of said entire net income yearly to my brothers me surviving, to the children in the first degree me surviving of my brothers, whether my brothers or any of them be living or dead at the time of my decease, and to my cousin, Sarah M. Crone, wife of Arthur Crone, share and share alike, per capita and not per stirpes."

The "contingencies hereinafter specified," as above referred to in this paragraph five, are provisions for an extra payment of $2,000 to his wife in event of war, and to the wife, in the event that the income from the wife's own personal estate at any time shall be reduced, the amount of such reduction not exceeding $2,000. The fifth paragraph of the will then provides that

> "Upon the death of my said wife after me, I order and direct that all of the principal of the fund of said trust then remaining be divided unto four equal parts, and I give, devise and bequeath the same as hereinafter provided. Upon the death of my said wife before me, I likewise order and direct that all of my said residuary estate be divided into four equal parts, and I give, devise and bequeath the same as hereinafter provided, to wit:
>
> I give, devise and bequeath one of said parts to my brothers living at the time of the decease of my said wife, if she survives me, or of my decease, if she predecease me, to their children in the first degree living at that time, whether my brothers or any of them be living or dead at such time, and to said Sarah M. Crone, if living at that time, share and share alike, per capita and not per stirpes."

The first of the four parts is to brothers or their children, and a cousin, as stated above. The second of the four parts is to go to the New York Academy of Medicine for a library fund. The third part to the College of Physicians and Surgeons of the Medical Department of Columbia University for research. The fourth part is given to Columbia University for a fund to pay an instructor in the Department of Botany.

The will was written in 1933 when the testator was 68 years old and his wife was 57. The ages of the beneficiaries of the trust in 1933 were as follows: Edwin T. Douglass (brother), 65 years; Helen D. Boshkoff (daughter of Edwin T. Douglass), 40 years; Jean Yeomans (daughter of Edwin T. Douglass), 26 years; Robert F. Douglass, (brother), 55 years; Marshall W. Douglass (son of Robert

F. Douglass), 31 years; Robert F. Douglass, Jr., (son of Robert F. Douglass), 23 years; Alice Douglass Graves (daughter of Robert F. Douglass), 29 years; Sarah M. Crone (cousin), 58 years. At the time of testator's death on December 5, 1946, the brother, Edwin T. Douglass was the only one of the above-named beneficiaries who had deceased.

The estate of the testator, Henry Beaman Douglass, is valued at more than a million dollars, and when the will was made in 1933 his wife, Minnie M. Douglass, had an independent annual income of her own in the sum of approximately $5,800.

The issues presented are these: (1)) Does the trust created by the fifth paragraph of the will fail, because of the waiver by the widow, and is the time for distribution accelerated? (2) Should the trust be set up, to continue during the life of the widow for the benefit of the brother surviving, the children of brothers, and the cousin?

All authorities have recognized for generations that a last will and testament executed according to existing statutes is the final declaration of a person in regard to the disposition of his property. The name itself certifies that it is his "testimony" upon that subject, and is the expression of his "mind" and "will" in relation to it. The right to make a will is not a natural right, but is a privilege granted by statute, that permits the owner of property to direct use and ownership after his death. It has always been recognized that a testator may make any disposition of his property that he desires, if it is not inconsistent with the laws, or contrary to the policy of the state. It is the true intention of the testator that governs primarily, in the construction of words used to express that intention. "The intent of a testator is not to be thwarted unless some positive rule or canon of construction makes it necessary." *Ellms* v. *Ellms*, 140 Me. 171; 35 A. (2nd) 651. "If you once get at a man's intention, and there is no law to prevent you from

giving it effect, effect ought to be given to it." *Merrill Trust Co.* v. *Perkins,* 142 Me. 363; 53 A. (2nd) 260, 262.

It is well established in this state that the election of the widow, to take against the provisions of the will, vacates the provisions made in her favor; but her waiver does not necessarily invalidate bequests or devises to others. Her action may diminish the estate, but the testator's intention as to others will be carried out so far as may be possible. The waiver will operate to accelerate remainders only when acceleration is the actual or presumed intention of the testator. *Adams* v. *Legroo,* 111 Me. 302; 89 A. 63; *Fox* v. *Rumery,* 68 Me. 121. This court has permitted acceleration of contingent remainders, after statutory waiver by the widow or widower, in those instances where the will has not expressed or shown a contrary intention, where the testator's objectives have been attained, where the remaindermen were definitely ascertainable, and where the expressed or presumed intention of the testator was that the enjoyment of the remainders should not for any reason be postponed. *Ladd* v. *Baptist Church,* 124 Me. 386; 130 A. 117; *Eastern Trust & Banking Co.* v. *Edmunds,* 133 Me. 450; 179 A. 716. See also regarding acceleration, *Nelson* v. *Meade,* 129 Me. 61; 149 A. 626, where the named life tenant died prior to testator.

In the case of *Eastern Trust & Banking Co.* v. *Edmunds,* 133 Me. 450; 179 A. 716, 717, the widow, Roberta Edmunds, waived the provisions of the will. There was a trust for the benefit of the wife, the brother, the grandson, and Ruby Fay Edmunds. The lineal descendants of the testator, or of his brother, took under the will contingent remainders, and the court said: "a contingent remainder will not be accelerated if there still remains undetermined contingencies so that it is impossible to identify the remaindermen or if there is evidence of an intention to postpone the taking effect of the remainder." In the Edmunds case, where there was acceleration, the grandson had died, the brother had died, and Ruby Fay Edmunds had married. All contingencies, men-

tioned in the will, were determined, and the members of the class who were to be donees, were ascertained.

"The guiding principle of a court in construing a will is to determine the intent of the testator, which must be found from the particular language which he has used, read in connection with the will taken as a whole, and in cases of doubt in the light of the surrounding circumstances. There is no particular magic in isolated phrases," as was stated by Justice Thaxter in *Moore* v. *Emery*, 137 Me. 259, 277; 18 A. (2nd) 781, 790.

The amount of the estate in the case at bar is a substantial one. The testator's wife was not his only concern. She had her own property, which gave her a fair income. He was interested to see that her income did not fall below a certain figure, and that she had a sufficient income in time of war or economic difficulties. His concern was for his blood relatives as well as for the wife.

When Henry Beaman Douglass made the will his wife was a comparatively young woman and he knew that she might expect many years of life. He knew also how much income she had and he knew the amount of his own property. The testator was interested both in his wife's future income and in the future of his blood relatives. He apparently did not foresee that his widow would waive the provisions of his will, as that appears to be the only contingency not expressly provided for.

The amount of this estate is large, and the testator provided that his widow should receive from the trust only $6,000 a year, with the right to receive $2,000 more under certain economic conditions. The balance of income from practically the entire estate was payable to brothers, their children, and a cousin. He evidently intended that his widow, with separate income of her own, should not receive the larger portion of income from his estate. He shows a desire to provide a continuing income for blood relatives during the lifetime of the widow. He says "upon the death

of my wife *after me"* the principal is to be divided into four equal parts. It is true that he provides for no trust in the event of her death *before me,* but we are not concerned with such contingency because she survived, as the testator expected. The fact that he intended no trust if his wife predeceased him, it does not necessarily follow that he intended the same result if she waived. If he contemplated her waiver of the provisions of her favor, he did not contemplate immediate acceleration, because by her waiver and with no children, she takes one-half, and the income from the substantial balance for the widow's lifetime may mean more to his relatives than the present value of a fourth part of the remaining half. The testator here shows the plain intention, in the light of all the surrounding circumstances, to provide income for his relatives during a period of the life of his younger wife. Mrs. Douglass, by her election, if he considered that situation, could destroy her interest in the trust, but he did not intend that the charities or educational institutions should take immediately the three-quarters of his remaining estate.

If the trust fails by the widow's waiver, the testator's relatives receive only one quarter of the fifty per cent balance of the estate. It will more nearly meet with all the testator's plans if they receive the income from one-half of the estate for the widow's life.

While the court believes that the intention of the testator, as expressed in his will, was to establish a trust for the benefit of relatives, as well as for the benefit of the widow, which trust was to continue during the widow's lifetime, there is another proposition involved here that does not appear in almost all cases where acceleration is permitted. The principal of the trust fund, at the termination of this trust, is divided into four parts, of which three parts are to be distributed to charities. The fourth part is to "my brothers *living at the time of the decease of my said wife* * * * to their children in the first degree *living at that time* whether my brothers or any of them be living or dead at

*such time,* and to said Sarah M. Crone, *if living at that* time, share and share alike, per capita and not per stirpes."

Our court has said that "the rule is that where a legacy is given to a class of individuals, not by a *designatio personarum,* but in general terms, as 'to the grandchildren of A' and no period is fixed for the distribution of the legacy, it is to be considered as due at the death of the testator; and none, but children who were born or begotten previous to that time can share in the legacy. But where there is by the will, a postponement of the division of the legacy until a period subsequent to the testator's death, every one who answers the description, so as to come within that class at the time fixed for the division, is entitled to share, though not *in esse* at the death of the testator, unless there is something in the will to show a contrary intention on the part of the testator. And persons living at the death of the testator, but afterwards deceased before the time of distribution, are not entitled to share. The class takes in all who answer the description at the time fixed for distribution, and no others." *Mary J. Webber, Executrix* v. *William T. Jones,* 94 Me. 429, 434; 47 A. 903, 905; *Storrs* v. *Burgess,* 101 Me. 26; 62 A. 730; *Giddings* v. *Gillingham,* 108 Me. 512, 520; 81 A. 951.

In the case at bar all contingencies have not yet been determined, and it is not now possible to know who will be entitled to this quarter portion of the remainder of the estate. The testator Douglass clearly intended that determination of the donees be at the time of the widow's death. Robert Douglass may or may not then be living. Which of the children of Robert or Edwin will survive? Sarah M. Crone, the cousin, may not outlive Mrs. Douglass, and she is plainly not entitled to share unless she does. The testator was interested in Sarah Crone as an apparently favored cousin. He did not intend to favor her heirs. Beyond all this, there may be other children born to testator's surviving brother who will be entitled to share if born, and if they survive the widow.

Under paragraph five of the will, above quoted, if any one of the named life beneficiaries dies during the lifetime of the widow his estate will be entitled to no part. If the widow's waiver has the effect of acceleration, the life beneficiaries will take a share of the estate now, even though one or all may predecease the widow, and possible future born children will be excluded. This would be a result never contemplated or intended by the testator.

The opinions of our court contained in the Maine Reports, as well as the opinions of courts in other jurisdictions, clearly demonstrate that there is no plain legal highway through this ever growing forest of individual wills. Each will filed is a new "tree," and where it shall be placed depends on the testator's desires as expressed in his last will and testament. This court, like all courts, must recognize former decisions as a partially blazed trail that can only indicate the general direction to reach the "destination" of testator's will and wishes. If the will to be construed does not violate some positive rule of law, the intentions of the testator must prevail; and when one considers the differences as well as the similarities in sane human minds, with their capacities for reasonable or unreasonable wishes, likes, dislikes, hopes and fears, it should be understood that no fixed and definite path can be found for all. Some wills must necessarily be, and often are, outside the common and ordinary pathway.

"No two testators are situated precisely the same, and it is both unsafe and unjust to interpret the will of one man by the dubious light afforded by the will of another." *Bradbury* v. *Jackson*, 97 Me. 449, 456; 54 A. 1068, 1070.

Our study of the record convinces us that we must hold under the terms of the will, that the waiver by the widow filed in this estate of Henry Beaman Douglass did not accelerate distribution. The trust should be set up to continue during the life of the widow for the benefit of the brother surviving, the children of brothers, and the cousin.

160

Who may be entitled to share in final distribution must await the termination of the trust.

The questions submitted, in the various and able briefs of counsel for the parties, show that doubts might well arise as to construction of this will. It is therefore proper that costs, including reasonable counsel fees should be allowed the parties by the single justice, with the exception of the widow who has waived her interest in the will.

*Decree to be made by sitting justice in accordance with this opinion.*