In Equity.

FREDERIC DANFORTH, Executor,

*vs.*

CHARLES F. REED, GEORGE E. REED, and FRANK A. REED.

Kennebec.   Opinion March 26, 1912.

*Wills.   Construction.   Power   of   Sale.   Remainders.*

In construing a will, the testator's intention collected from the whole instrument and considered with reference to all the surrounding circumstances, his family, the nature, amount, and situation of his property, and his avowed or manifest purpose, should govern.

A will directed that all the testator's property should be held in trust for payment of the income to his widow during her life, gave her the use of the homestead and its furniture, and provided that, if the income should not be sufficient to comfortably maintain her, the executor might use as much of the principal as he deemed necessary, and that at the widow's death the estate then remaining should go to testator's two stepsons, and to his own son in stated proportions. *Held,* that the remainders vested in the son and stepsons at testator's death subject to divestiture by execution of the trustee's power of disposal during the widow's lifetime, and that the executor was not empowered to sell the land for the purpose of distributing the estate on death of the widow.

A testamentary remainder will not be construed to be contingent if, consistently with the testator's intention, it may be deemed vested.

In equity.   On report.   Decree according to opinion.

Bill in equity to obtain the construction of the will of Robinson Reed, late of Gardiner, deceased testate.   An agreed statement of facts was filed and the case reported to the Law Court for determination.

The case is stated in the opinion.

*Charles A. Knight,* for plaintiff.

*A. C. Stilphen,* for Charles F. Reed and George E. Reed.

*George W. Heselton,* for Frank A. Reed.

Sitting: Whitehouse, C. J., Savage, King, Bird, Haley, Hanson, JJ.

Whitehouse, C. J. This bill in equity was brought for the purpose of obtaining a judicial construction of the will of Robinson Reed late of Gardiner, and was reported to the Law Court for final determination upon the agreed statement of facts. The first and second items of the will are as follows:

"Item I. I direct all my property, real and personal, to be held in trust by my executor, hereinafter named, and him to invest and reinvest the same as in his judgment may be most advisable and the net income thereof as the same accrues he shall pay over to my beloved wife Sabrina Maria Reed so long as she shall live, she having the use and occupancy of my homestead and all the furniture therein, to have and use the same as she may desire, and to make such change, alteration and improvements in said homestead as she may desire, and if she should so wish, she may dispose of my said household furniture to the children in such manner as may to her seem fitting, giving to each his proportional value thereof. If the income of my property should not be sufficient for the comfortable maintenance of my said wife, I hereby direct my executor to use so much of the principal of my property as from time to time he may deem necessary therefor in addition to said income.

"Item II. At the decease of my said wife, I give, bequeath and devise all the rest and residue of my estate then remaining to my two stepsons, children of my said wife, and to my son in the following proportions, to wit:

"To my stepson Charles F. Burke, otherwise known as Charles F. Reed, one-seventh part of said remainder, to my stepson George E. Burke, otherwise known as George E. Reed, two-sevenths of said remainder, to my own son Frank A. Reed four-sevenths of said remainder, the same to be paid to my stepsons and son as soon as may be after the decease of my said wife.

"Item III. I hereby appoint Frederic Danforth, Esq., of Gardiner, executor of this my last will and testament."

The following facts appear in the agreed statement. The testator left a widow, Sabrina Maria Reed, one son Frank A. Reed and two stepsons, George E. and Charles F. Burke, known also as George E. and Charles F. Reed, who were the legatees named in

the will. At the time of the testator's death, May 24, 1888, his estate consisted of a brick store appraised at $5,000, then occupied by the defendants, Frank A. Reed and George E. Burke, as co-partners; a homestead appraised at $2,500, $4,202.32 in cash and notes, and household goods appraised at $50. The plaintiff administered the estate as executor and according to his second account in November, 1907, had a balance of personal estate amounting to $3,216. After the death of the testator, the homestead was occupied by the widow until her decease February 13, 1911, and the plaintiff had acted as trustee in the management of the entire estate. The store was rented at the time of the death of the testator and was afterward rented by the trustee. At the time of the widow's decease the value of the store was approximately $6,000, the homestead $3,000 and the personal property in the hands of the trustee was substantially of the same value as in 1907, namely, $3,216. There were no debts outstanding against the estate. After the decease of the widow, the plaintiff petitioned as executor for license to sell the real estate for the purpose of making a division of the entire estate among the residuary legatees. Thereupon a question arose as to the power of the trustee to sell the real estate after the death of the widow under the circumstances stated, and the court is asked to determine whether the plaintiff can now legally sell the real estate and give a valid title to the purchaser under the provisions of the will or whether the title to the real estate was vested in the legatees and the executor's authority limited to the distribution of the personal property.

In considering the proper construction to be given to this will for the purpose of determining the question presented, the intention of the testator, collected from the language of the whole instrument and examined with reference to all the surrounding circumstances, his family, the nature, amount and situation of his property, and his avowed or manifest purpose, is to have a controlling influence in the interpretation of the testamentary provisions especially involved in the inquiry. In the light of this elementary rule of construction, and of the facts and circumstances disclosed by the agreed statement, the well recognized and familiar principles of law respecting life estates with a qualified or unqualified power of disposal, and the doctrine of vested and contingent remainders, lead irresistibly to the conclusion that the title to the real estate here in

question was vested in the son and stepsons, in the proportions specified in the second item of the will, at the death of the testator, but liable to be devested by the execution of the trustee's power of disposal during the lifetime of the widow, the actual possession and enjoyment of it by these sons being postponed in any event until the death of the widow.

The thoughtful and clearly expressed terms of the first item of the will disclose a manifest desire and purpose on the part of the testator to give to his wife the use and occupation of "the homestead and all the furniture therein" and to provide ample means for her support during her lifetime. He directs the executor to hold all his property real and personal in trust, to invest and reinvest it as he may deem most advisable and pay over to his wife the net income of it as long as she shall live; and if the income of the property should prove insufficient for her "comfortable maintenance" the executor is directed to use so much of the principal as he may deem necessary in addition to the income. In this item the testator also gave to his wife direct authority to make such alterations and improvements in the homestead as she might desire and to dispose of the household furniture among the children "in such manner as may seem to her fitting, giving to each his proportional value thereof."

But knowing the style of life to which his wife had been accustomed, and that her wants would be few and simple, the testator undoubtedly felt well assured that her "comfortable maintenance" after his death would never involve the necessity of disposing of any of the real estate, and but *slight,* if any, encroachment upon the principal of the personal estate. It appears that the store was occupied by his son and one of his stepsons as co-partners at the time of his death, and as his death occurred about six weeks after the date of the will, it may fairly be inferred that the store was so occupied at the date of the will, and that it was his desire and expectation that the title to the store should remain in the family and not be transferred to strangers.

At the beginning of the second item in the will the language is: "At the decease of my said wife I give, bequeath and devise all the rest and residue of my estate then remaining to my two stepsons and to my son," &c. It is evident from the use of the word "devise" in this provision that the testator anticipated that at the

decease of the widow there would be both real and personal property belonging to the estate. It is true that in the clause specifying the aliquot part given to his son and each stepson, the language is; "the same to be paid to my stepsons and son as soon as may be after the decease of my said wife, and that the term "to be paid" is ordinarily applicable exclusively to personal property. But the term here would have its proper field of operation in the distribution of the undiminished personal estate amounting to $3,216, and the use of the phrase in this connection should not control the intention of the testator gathered from all parts of the will and the existing circumstances considered in relation to each other. The real estate had vested in the sons at the death of the testator, to be devested only upon the conditions above stated. After the death of the widow and the termination of the trust, it was no longer subject to the control of the plaintiff either as trustee or executor. By the aid of the personal property of $3,216, the division of the estate into the proportional parts named by the testator can probably be conveniently effected without the necessity of exposing the store to a public sale.

This conclusion that the real estate passed to the sons as a vested remainder is in harmony with the established rules of law and the recent decisions of this court. In the first place, it is among the elementary rules of construction that no remainder will be construed to be contingent which may consistently with the intention of the testator be deemed vested; and in *Woodman* v. *Woodman,* 89 Maine, 128, it was held by this court that "according to principle and the weight of authority a remainder is not made contingent by an uncertainty as to the amount of property that may remain undisposed of at the expiration of the particular estate, the life tenant having the power of disposal." See also *Burleigh* v. *Clough,* 52 N. H., 267; *Ducker* v. *Burnham,* 146 Ill., 9; *Heilman* v. *Heilman,* 129 Ind., 59, and *Welsh* v. *Woodbury,* 144 Mass., 542.

It is accordingly the opinion of the court that under the provisions of the will and the circumstances of this case, the plaintiff is not clothed with power to sell the real estate of Robinson Reed, the title thereto having vested in the son and stepsons at the death of the testator as above stated, and that "the plaintiff's authority is now limited solely to a distribution of the personal property after the payments of the debts and funeral charges of the widow."

*Decree accordingly.*