In Equity.

WALTER L. MORSE, et als., Trustees, *vs.* WILLIAM R. BALLOU, et als.

Penobscot. Opinion June 28, 1912.

*Joint Tenants. Tenants in Common. Trust. Executors. Vested Interest. Income. Distribution. Principal.*

This is a bill in equity asking for the construction of the following residuary clause in the last will and testament of Llewellyn J. Morse, late of Bangor, deceased.

"The remaining one-third I give, bequeath and devise to Walter L. Morse, Carrie L. Higgins and Alfred J. Robinson above named, to have and to hold the same to the said Walter L. Carrie L. and Alfred J. their heirs, executors, administrators or assigns according to the nature and quality thereof respectively in trust, for the following purposes and uses, viz: to invest, manage and control the same as they may deem best, and during the lifetime of my deceased daughter's husband Willis B. Bridges, to pay over to the said Fannie Bridges Robinson and Louisa Bridges Hill, the net annual income and profits of the said one-third held in trust by them as aforesaid, said trust to continue until the death of the said Willis B. Bridges: and after his decease, then I order and direct said Trustees to transfer and convey said one-third to the said Fannie Bridges Robinson and Louisa Bridges Hill, each to share and share alike, and in case they or either of them are not living at the termination of said trust, then I order and direct said Trustees to transfer and convey said one-third to the persons who would be at the time the legal heirs of the said Fannie Bridges Robinson and Louisa Bridges Hill, or either of them, said heirs to take the same share the said Fannie Bridges Robinson or Louisa Bridges Hill would have taken if living."

Willis B. Bridges is living so that the trust has not yet terminted. Fannie Bridges Robinson is also living but Louisa Bridges Hill died testate, March 22, 1907, leaving a husband and five children.

1. That the two daughters took a vested interest in the income as tenants in common, and not as joint tenants.

2. That upon the death of Mrs. Hill her one-half of the income became payable to the executor under her will and not to her heirs at law.

3. That the last clause in the portion of the will under consideration "Said heirs to take the same share the said Fannie Bridges Robinson or Louisa Bridges Hill would have taken if living" refers to the principal of the trust estate at the termination of the trust, and not to the income before the termination.

4. That the second question proposed, as to who shall be entitled to the principal at the termination of the trust, and whether the husband can be considered as an heir in the distribution, is premature. Who the claimants may be at the death of Willis B. Bridges is now a mere matter of conjecture, and it may be that under the changed conditions no instructions from the court will then be needed or requested, and it is therefore unnecessary for the court at this time to consider the question.

In equity. On report. Decree according to opinion.

Bill in equity asking for the construction of the last will and testament of Llewellyn J. Morse, late of Bangor. Answers were filed by the several defendants. At the conclusion of the hearing before the Justice of the first instance, the case was reported to the Law Court upon bill, answers and proof, "the Law Court to render such final judgment as the legal and equitable rights of the parties require."

The case is stated in the opinion.

*Louis C. Stearns, Jr.,* for plaintiffs.

*Irish & George,* for Louisa Hill, Mark Langdon Hill, Walter Hill and Marion Hill.

*George H. Worster,* for William R. Ballou.

*William H. Irish,* for Fred D. Hill, Executor and Guardian.

SITTING: WHITEHOUSE, C. J., SPEAR, CORNISH, BIRD, HALEY, HANSON, JJ.

CORNISH, J. Llewellyn J. Morse died at Bangor October 24, 1902, leaving a last will and testament which was duly approved and allowed at the November Term 1902 of the Probate Court for Penobscot County.

The testator in the residuary clause of his will divided the residue of his estate into thirds and bequeathed one of these thirds to the plaintiffs, as trustees, in the following terms:

"The remaining one-third I give, bequeath and devise to Walter L. Morse, Carrie L. Higgins and Alfred J. Robinson above named,

to have and to hold the same to the said Walter L. Carrie L. and Alfred J. their heirs, executors, administrators or assigns according to the nature and quality thereof respectively in trust, for the following purposes and uses, viz: to invest, manage and control the same as they may deem best, and during the lifetime of my deceased daughter's husband Willis B. Bridges, to pay over to the said Fannie Bridges Robinson and Louisa Bridges Hill, the net annual income and profits of the said one-third held in trust by them as aforesaid, said trust to continue until the death of the said Willis B. Bridges; and after his decease, then I order and direct said Trustees to transfer and convey said one-third to the said Fannie Bridges Robinson and Louisa Bridges Hill, each to share and share alike, and in case they or either of them are not living at the termination of said trust, then I order and direct said Trustees to transfer and convey said one-third to the persons who would be at the time the legal heirs of the said Fannie Bridges Robinson and Louisa Bridges Hill, or either of them, said heirs to take the same share the said Fannie Bridges Robinson or Louisa Bridges Hill would have taken if living."

Willis B. Bridges is living so that this trust has not yet terminated. Fannie Bridges Robinson is also living, but Louisa Bridges Hill died, testate, March 22, 1907, leaving a husband and four minor children by her marriage to him, and a son by a former marriage.

The plaintiff trustees, by bill in equity, in which all persons interested have been made parties, ask this court for a construction of the will.

1. The first question propounded is this:

"What disposition shall be made of one-half of the net annual income of said one-third of said residue from the death of Louisa Bridges Hill until said trust shall be terminated by the death of Willis B. Bridges?"

We think the intent of the testator as expressed in the will can be given effect under well established rules of construction. He desired his two daughters to share equally in this one-third. He provided for a trust to continue during the life of Willis B. Bridges, the husband of a deceased daughter. During that period the daughters are to share the income. At the termination of that period they are to share the principal, and in case of the death of either or both

prior to the termination of the trust, the then legal heirs of such deceased daughter are to take such daughter's share in the principal. For that contingency, express provision is made. But nothing is said as to what shall be done with the daughter's share of the income accruing between her death and the termination of the trust. The gift of the income, unlike the gift of the principal, is made to the daughters alone. The heirs are not mentioned. The general rule is that a devise or bequest to children gives a vested interest unless the contrary intention is shown by the will, and we fail to find any contrary intention here.

It is also a well settled rule that in the case of the bequest of income to several persons by name, to be divided among them equally, the legatees take as tenants in common and not as joint tenants and in the case of the death of a legatee before the termination of the trust, the income must be paid to the legal representative of the estate of the deceased legatee.

The following cases are directly in point.

In *Jones* v. *Randall*, 1 Jac & W, 100, the testator gave his leasehold estate in trust to his executors, with directions to pay an annuity of four hundred and fifty pounds to his daughter during her life, and after her death to her surviving children in equal proportions, the trust to continue and the annuity to be paid during the life of the survivor of the children. The daughter died after the will took effect leaving four children, and subsequently one of these children died. The question then arose as to whom the share of the annuity belonging to the deceased child should be paid and it was held that it should be paid not to the three surviving children but to the administrator of the deceased child.

In *Eales* v. *Cardigan*, 9 Sim., 384, a testatrix gave to her servants, Samuel Eales and Charlotte, his wife, an annuity of two hundred pounds a year, which was made a charge upon the estate, for their lives and the life of the survivor. The court construed this to mean that each was entitled to the annuity during the joint lives of both and the life of the survivor, and upon the death of the husband, the wife must continue to receive her one-half, while the other one-half passed to the legal representatives of the husband.

The same rule was recognized and followed in *Bryan* v. *Twigg*, L. R. 3, Eq. Cas., 432.

In *Stanwood* v. *Stanwood,* 179 Mass., 226, the will under discussion closely resembled the one in the case at bar, so far as the point under consideration is concerned. The testator devised all his real estate to a trustee for the equal benefit of his four children, who were to receive the net income equally during a certain period, at the termination of which, the trustee was to divide the property held by him under the trust equally among the testator's "said children and their heirs and assigns." One of the children died after the testator but before the termination of the trust. The court held that the children took a vested interest in the income as tenants in common and that the share of this deceased child in the income went to the executor of the child.

The opinion cites and follows the three English cases above referred to. The very recent case of *Federhen* v. *Kibbey,* 204 Mass., 291, reaffirms the same principle.

But the learned counsel for the son of Mrs. Hill by her first marriage, while apparently admitting the force of these decisions contends that they do not apply here, because he claims that the last clause of this section "such heirs to take the same share the said Fannie Bridges Robinson or Louisa Bridges Hill would have taken if living," in terms divides the income as well as the principal among the heirs, and negatives the idea that it should pass to the legal representative of the deceased daughter.

We do not think this clause was intended to have or has such an effect. It is not to be taken by itself, but is to be read with what precedes it, and when so read it is manifest that this last clause is intended to make clear the testator's meaning. At the termination of the trust he orders the trustees "to transfer and convey said one-third, to the persons who would be at the time the legal heirs of the said Fannie Bridges Robinson and Louisa Bridges Hill or either of them." This does not say in terms that the distribution is to be made by right of representation, but transfers the trust estate to all the heirs of the two daughters, if both had passed away. In order to make it perfectly clear that each branch shall receive only its share, he added the last clause which leaves it beyond a doubt, "such heirs to take the same share, the said Fannie Bridges Robinson or Louisa Bridges Hill would have taken if living." Without this last clause the will might be given the same effect,

but with it, every possible doubt is cleared away as to who shall receive the principal and in what proportions.

This clause was therefore, not unnecessary as the son claims, but was wisely added.

Moreover this last clause cannot by any fair construction be made to apply to the income to be distributed before the termination of the trust estate. The word "such" forbids it. The preceding sentence provides for the distribution of the corpus of the estate among her then living heirs in case of the death of a daughter. The date of the termination of the trust fixes the heirs who shall be entitled to receive the principal, and this last clause says, "such heirs" shall take the share the daughter would have taken. How can it be possible for the income to be paid over to heirs, when the persons so entitled to take cannot be ascertained until years afterward when the trust ceases. For instance, William R. Ballou, the son who now claims a portion of the income, may never be entitled to any portion of the principal. His right depends upon his being alive at the termination of the trust estate. He will then be one of "such heirs." And only "such heirs" will then take. Until that time he has no interest in the estate.

1. In answer to the first question therefore, the court would say that, one-half the net annual income of said one-third of the residue, from the death of Mrs. Hill until the termination of the trust should be paid to Fred D. Hill, the executor of her will.

2. The second question propounded is this:

"At the death of said Willis B. Bridges and the termination of said trust, who will be entitled to the principal of one-third of said residue?"

We think this question is premature. The trust is still in existence. What the situation may be or who the claimants may be at the death of Willis B. Bridges is now a mere matter of conjecture. The situation now and the situation then will doubtless differ greatly. It may change so that no instructions will then be needed or requested. It is certainly a moot question at the present time and therefore it is unnecessary for the court to consider it.

Taxable costs and reasonable counsel fees, may be allowed by the Judge of Probate from the trust estate.

*Decree in accordance with this opinion.*