LAVINIA BARRY, et als. *vs.* ISABELLA McCOSE AUSTIN.

Hancock.    Opinion March 7, 1919.

*Wills. Creation of life estates with power of disposal. Rule where in a will an absolute gift is followed by an attempted gift over. General rule to be followed in construction of wills, providing that no positive rule of law is violated. Creation of life estate by implication. Actual and judicial intention in the interpretation of wills. Application of R. S., Chap. 79, Sec. 16.*

Bill in equity to construe the will of Virginia D. Austin. Clause two provides: "I give, bequeath and devise to my beloved husband William B. Austin all the rest, residue and remainder of my estate real, personal and mixed wherever found and however situated, and to have full power to sell any or all of my estates and to convey the same for his own use." The next clause provides that at the death of her husband "any of my estates are left real or personal after paying his funeral charges and erecting a suitable set of grave stones or monument at his grave, I give bequeath and devise to my cousins or their . . . heirs" etc.

*Held:*

1. That the actual intention in the mind of the testatrix was not to give the husband an absolute estate in fee simple, but a life estate with power of disposal for his personal use and benefit during his lifetime.

2. The will, though inartificially drawn, fulfils the purpose of the testatrix and violates no positive rules of law and no fixed canons of interpretation.

3. When a devise is expressed in such general terms as to create an estate of inheritance under R. S., Chap. 79, Sec. 16, and is coupled with an absolute and unqualified power of disposal either in express language or by implication, a gift over of any estate that may remain at the death of the first taker is repugnant and void.

4. If however the words of the general gift under the statutes are followed by a qualified and restricted power of disposal in the first taker a life estate by implication is thereby created and the limitation over is valid.

5. The power of disposal in the husband under this rule is limited in this case to his personal use and benefit. It is not restricted in its source to the income alone, nor in its purpose to the bare necessities of life. He could use the principal as well as the income, if he so desired. He could sell and convey for the specified purpose, but had no authority to give by will which would be to dispose of the property not for his own use but for the use of another.

6. The husband therefore was given a life estate by implication in the estate of his wife, coupled with a qualified power to dispose of the same during his lifetime for his own use, but not a power to dispose of the unused portion by will, as he attempted to do, and at his decease the unused remainder passed to the cousins of the testatrix or their heirs, and not to the second wife who is devisee under his will.

Bill in equity asking for the construction of will of Virginia D. Austin. Cause was heard before single Justice upon bill, answer and replication, and by agreement of parties same was reported to Law Court for determination. Judgment in accordance with opinion.

Case stated in opinion.

*Hale & Hamlin,* for complainant.

*Fulton J. Redman,* for respondent.

SITTING: CORNISH, C. J., SPEAR, HANSON, PHILBROOK, DUNN, MORRILL, WILSON, JJ.

CORNISH, C. J. This court is asked to construe the Will of Virginia D. Austin, late of Lamoine, in the County of Hancock. The will is brief. The first clause directs the payment of debts and funeral charges. Clauses numbered two and four (there is no clause three) which give rise to the controverted questions, are as follows:

"2nd. I give, bequeath and devise to my beloved husband, William B. Austin all the rest, residue and remainder of my estate real and personal and mixed, wherever found and however situated, and to have full power to sell any or all of my estates and to convey the same for his own use."

"4th. At the decease of my husband, William B. Austin, any of my estates are left real or personal after paying his funeral charges and erecting a suitable set of grave stones or monument at his grave I give, bequeath and devise to my cousins Lavinia Barry, Lottie Fordney, Daisy Fordney or their heirs the rest residue of my estate real and personal and mixed, wherever found and however situated, and I do hereby appoint my said husband William B. Austin sole executor of this my last will and testament hereby revoking all former wills by me made and it is my wish that said William B. Austin give no bonds."

This will was dated December 31, 1894, and Mrs. Austin died on February 25, 1910.

The precise question to be determined is the nature of the estate devised to the husband; was it a life estate with qualified power of disposal and a valid limitation over, as claimed by the plaintiffs, the residuary devisees, who are cousins of the testatrix, or was it an absolute estate in fee simple in the husband, and was the attempted limitation over void for repugnancy, as claimed by the defendant, who is the second wife of Mr. Austin and the sole devisee and legatee under his will?

As always in this class of cases, two fundamental questions arise:

First, what was the real intention of the testatrix as gathered from the entire instrument, viewed in the light of existing circumstances?

Second, is that real intention so expressed in the will that it can be effectuated or is the expressed intention so far in conflict with some positive rule of law that it cannot be carried into execution?

The former might perhaps be called the actual intention, the latter the judicial intention; and the latter is not to be substituted for the former unless the court feels itself compelled so to do by canons of interpretation so firmly established as to have become fixed rules of law governing the transfer of property. In such a case the observance of the settled legal rule, although it may defeat the actual intention of the testator, "is deemed indispensable to the required

certainty and security in establishing titles to property and especially in the disposition of landed estates." *Bradley* v. *Warren*, 104 Maine, 423-427. On the other hand such a rule, if it clearly overrides the real purpose of the testator, is to be applied cautiously, and is not to be forced. *Hopkins* v. *Keazer*, 89 Maine, 347-353; *Holcomb* v. *Parker*, 106 Maine, 17, 19.

1. ACTUAL INTENTION.

Of the actual intention in the mind of the testatrix when this will was drawn and executed there can be little doubt. She desired and intended to provide for her husband's comfort in the most ample and generous manner, but not to give him an absolute title. The will itself shows this when we consider all its parts. The first clause of the gift is: "I give, bequeath and devise to my beloved husband William B. Austin all the rest, residue and remainder of my estate, real, personal and mixed, wherever found and however situated." So far she does not say whether the gift is in fee or for life, and had the devise stopped there, with no accompanying words to qualify or explain it, it is undoubtedly true that under our statute, R. S., Chap. 79, Sec. 16, the legal effect would have been to give the husband a fee in the realty and an absolute estate in the personal property. But the testatrix did not stop there. She annexed to it as a part of the same sentence these significant words, "to have full power to sell any or all of my estates and to convey the same for his own use." These qualifying words essentially modify the preceding sentence,. and taking all the words together as forming one sentence, it is obvious that she did not intend to give her husband an absolute estate but an estate for his life, the limit beyond which his earthly happiness could not reach, with power during life to sell and convey the estate for his own use. While therefore the technical words "life estate," or "estate for life" are not expressly used, yet the limitation of the power of disposition to a sale and conveyance "for his own use" expresses the same idea in untechnical language. The words are there in another form. In essence the expressions are equivalent.

This implication is confirmed when we consider the next clause in which she gives in fee by apt words any residuum that may be left at the decease of her husband to her three cousins or their heirs, subject to the payment of his funeral charges and the erection of a suitable monument. Had the testatrix intended to give an abso-

lute title in fee to her husband there was no occasion for item four, because there would be no remainder to be disposed of, nor would there be any necessity of her imposing a charge upon the property for the payment of the husband's funeral expenses and monument. If his title to the property were absolute those expenses would necessarily be paid out of it. But it would be his property that would pay them and not hers. When she imposed this charge it could be on no other theory than that it was still in a sense her estate, which was passing along to the objects of her bounty, and that after the cessation of the life estate in the husband, the remainder should belong to the next takers, the cousins or their heirs, subject to these expenses.

It is also to be noted that in clause two, the devise to the husband does not mention heirs, while the devise to the cousins specifies heirs. True, the omission of that word does not conclusively affect the nature of the devised estate, under R. S., Chap. 79, Sec. 16, which provides that "a devise of land conveys all the estate of the devisor therein, unless it appears by the will that he intended to convey a less estate," but its exclusion in the clause giving an estate to the husband and its inclusion in the clause giving the residue to the cousins are significant, and throw some light, as a matter of fact and of evidence, upon the real intention in the mind of the testatrix and the distinction which she sought to create between the quantity of the two estates devised.

When we consider the circumstances and the relations of the parties the same result is reached. Mrs. Austin's first concern was for her husband and she desired to provide generously for him. They had no children who might share in the estate, and she therefore desired him to receive the full personal benefit of the entire property during his lifetime. At his death however she naturally wished the remaining property, if any, to go to her heirs and not to his, nor to a second wife. She therefore provided in the fourth clause that the remainder should be divided among her three cousins or their heirs, and as showing her entire confidence in her husband, although he was the sole beneficiary under clause two, she nominated him as executor and without bond under clause four.

The very thing happened which Mrs. Austin endeavored to guard against. Her husband married again, the precise date is not given, he died on April 30, 1914, leaving a will dated July 19, 1911, in

which he devised and bequeathed all his property to this second wife, the defendant in this bill in equity. She now claims under his will not only all the estate belonging to Mr. Austin in his own right, but also all the property owned by the first wife and passing under her will, thus setting aside the rights of the cousins and disregarding the evident intention to make them the residuary objects of Mrs. Austin's bounty. We need say no more concerning the actual intent of the testatrix.

## 2. THE JUDICIAL INTENTION.

We come now to the second fundamental question, was Mrs. Austin's actual intention expressed in such form that it must fail of execution, and must her property pass into other channels than those selected by herself, or can her purpose be legally effectuated?

This question may admit of more doubt, but on the whole we are of opinion that the interpretation of the instrument which fulfils the actual purpose of the testatrix violates in this case no positive rules of law, and no fixed canons of interpretation.

In *Stuart* v. *Walker*, 72 Maine, 145, Chief Justice PETERS in his characteristically clear manner discussed various established rules of construction and gave the reasons for their adoption and retention. It may be helpful to recast in brief form such of those rules as have been discussed by counsel in this case. They may be stated as follows:

First: Where an absolute gift in fee simple is followed by an attempted gift over, the latter is void. The reason is that the gift exhausted itself in the first giving and nothing remains for the second taker. A fee cannot be limited upon a fee. The attempted gift over is repugnant to the first gift and the two cannot stand together. The testator may seek to but cannot accomplish two or more inconsistent purposes in one bequest. Illustrations of the application of this familiar rule may be found in the following cases:

"I give and devise to my wife Sarah all the rest and residue of my real estate. But on her decease, the remainder thereof I give and devise to my said children" etc. *Mitchell* v. *Morse*, 77 Maine, 423.

"I will, devise and bequeath to my beloved wife Sila, my home lot, etc.; and at her decease what remains I wish to be equally divided between B and W," etc. *Taylor* v. *Brown*, 88 Maine, 56.

"The residue of my estate I give, devise and bequeath to wit: . . one moiety thereof to my daughter Alice . . . provided however that if my said daughter . . . shall have entered into 'possession of said estate so much thereof as may remain at her decease shall so descend and be distributed to and among my heirs at law" etc. *Bradley* v. *Warren*, 104 Maine, 423.

"I give and devise to Nathan and Ellen, children of my son Isaac and their heirs and assigns forever all the real estate in Buckfield village that I own at my decease, etc. . . . to them or the survivor of them, and in case both shall die without issue, and without selling the same, then I give and devise the same to such of my heirs," etc. *Morrill* v. *Morrill*, 116 Maine, 154. The case at bar does not fall within this rule. An estate in fee was not given to the first taker.

Second: Where a life estate in the first taker is created in positive and express terms, it cannot be enlarged to a fee simple by implication arising from an annexed power of disposal, however broad and unqualified. "Implication is admitted in the absence of and not in contradiction to an express limitation." Thus "I give and bequeath and devise to my beloved wife . . . . all the rest and residue of my estate, to have and to hold the same to her own use and benefit during her life, with full power to sell any or all of it and to use the principal thereof, if in her judgment her comfort requires it, etc. . . . . and whatever remains at her decease not disposed of by her, it is my will shall be given to the Baptist Home Mission Society" etc. *Hatch* v. *Caine*, 86 Maine, 282. Other illustrations may be found in *Ramsdell* v. *Ramsdell*, 21 Maine, 288; *Stuart* v. *Walker*, 72 Maine, 145; *Copeland* v. *Barron*, 72 Maine, 206; *Small* v. *Thompson*, 92 Maine, 539; *Richards* v. *Morrison*, 101 Maine, 424.

The case at bar does not fall within this rule. A life interest in express terms was not given to the first taker.

Third: If the devise is expressed in such general terms as to create an estate of inheritance under R. S., Chap. 79, Sec. 16, and an absolute and unqualified power of disposal is added, either in express language or by implication, with a gift over of any estate that may remain at the death of the first taker, the gift over is repugnant and void, for the reasons already given under rule one. The full and unqualified power of disposal neither adds to nor detracts from the

absolute estate first given. It is already embraced in that estate and merely emphasizes its character. The same repugnancy and inconsistency exist as under the first rule and the limitation over is void. To illustrate:

"As to the residue of my estate, whatever, after payment of my just debts, I give and bequeath the same to my beloved wife. . . . And lastly, I further direct that if there be any of my said property left after the decease of my said wife, then said property left be equally divided," etc. *Jones* v. *Bacon*, 68 Maine, 34.

"Second, I also give and bequeath to my said wife $4,500, to be paid to her in cash or in such personal securities as she may select from my estate. Fifth: And upon the decease of my said wife I give, bequeath and devise all that may remain unexpended of the real, personal or mixed estate given to my said wife in the second clause, to J. L. Hayes," etc. *Loring* v. *Hayes*, 86 Maine, 351.

This rule does not apply to the case at bar, because neither in express language nor by implication is an absolute and unqualified power of disposal added to the words of general gift in the first taker.

Fourth: If however the devise is expressed in such general terms as would otherwise create an estate of inheritance under R. S., Chap. 79, Sec. 16, and these general terms are followed by a qualified and restricted power of disposal in the first taker, a life estate by implication is created and the limitation over is valid. This rule is stated by Chief Justice PETERS in *Stuart* v. *Walker*, 72 Maine, 145, as follows:

"A life estate by implication usually arises where a donor devises property generally, without any specification of the quantity of interest and adds some power of disposition of the property and provides a remainder. For instance A gives an estate to B with a power of disposal annexed and a gift over to C. . . . A power of disposal is annexed by A to his bequest to B. The effect of this depends upon whether it is a qualified or an unqualified power. If it is an absolute and unqualified power it really neither takes from nor adds to the amount of the estate previously given, though there be a gift over. . . . .

But when the power of disposal is not an absolute power, but a qualified one, conditioned upon some event or purpose and there is a remainder or devise over, then the words last used do restrict and

limit the words first used and have the force and efficacy to reduce what was apparently an estate in fee to an estate for life only. Thus A gives an estate to B, with the right to dispose of so much of it in his lifetime as he may need for support, and if anything remains unexpended at B's death, the balance to go to C. Here there may be something to go over. B is to dispose of the estate only for certain specified purposes. He can defeat the remainder only by an execution of the power. The clear implication of such a bequest, taking all its parts together, is that B is to possess a life estate. Here a life estate is implied and not expressly created."

The same rule is restated by the same learned Chief Justice in another case in the same volume as follows:

"Words of inheritance are now prima facie implied by a general or naked devise. From the nature of things any power of disposal added to such a devise cannot extend it. It now only seems to emphasize and repeat the gift. But a limited or special power of disposal annexed to a general devise, with limitation over, may restrain and limit the devise to the lifetime of the devisee." *Copeland* v. *Barron*, 72 Maine, 206. Those two cases, *Stuart* v. *Walker* and *Copeland* v. *Barron*, are not referred to as precedents in the case at bar because in each a life estate was expressly created in the first taker and are cited above as illustrations of the second rule. But these extracts are made because they define with clearness and discrimination the true rule upon this fourth point.

The crucial question therefore to be determined in this case is whether a life estate was created by implication and that depends upon whether under the peculiar terms of this instrument the power of disposal in the husband was qualified or unqualified, limited or unlimited.

We think the power of disposal was qualified and limited. The words authorizing sale and conveyance "for his own use" can have no other meaning in this connection than for his personal and exclusive use. We cannot disregard them as a mere empty phrase, an attempted legal formality of no effect or of the same general effect as the words "to his own use and behoof forever" employed in the habendum of a deed and derived from feudal lore long since forgotten. We have here not technical words, nor words used in a technical sense, but common, ordinary language employed by a testatrix

and a scrivener apparently unskilled in the use of legal phrases, to express her intent and last wishes in the disposition of her property. Why should they not be "construed according to the common meaning of the language," according to the statutory rule? R. S., Chap. 1, Sec. 6, Par. 1.

"His own use" cannot be for the use of anyone else. Lexicographers define the adjective "own" as belonging peculiarly, especially or exclusively to. It has received like judicial interpretation. Thus, "I give to Martha Brady two thousand dollars for her own use was held to be for her separate use. "The giving it for her own use" say the Court, "is an uncommon expression and denotes some particular intention. If it had been intended barely to give the legacy, subject to the marital rights of the husband, it would have been sufficient to say 'I give it to Martha Brady.' But the addition of the words 'for her own use' is tantamount to saying not for the use of the husband, because if it was for his use it could not be for her own use." *Jamison* v. *Brady*, 6 Serg. & R., 466.

What can be more personal than a use belonging exclusively or especially to a devise? Even under the widest import of the ordinary meaning of those words it can only be his personal use, his personal benefit that is meant. Within that limit the power was broad. It was not confined in its source to the income alone nor in its scope to the bare necessities of life. The husband could doubtless use the principal as well as the income if he so desired, *McGuire* v. *Gallagher*, 99 Maine, 334, 336; *Haseltine* v. *Shepard*, 99 Maine, 495; *Williams* v. *Dearborn*, 101 Maine, 506. But he could defeat the remainder only by an execution of the power, to sell and convey for his own use. This meant in this case, by conveyance during his lifetime for the specified purpose, but no authority was given for testamentary disposition, which would take effect at his decease. Such disposition transferred the property not for his own use but for the use of another, the devisee under the will. If he sold during his lifetime he had the use of the proceeds. If he disposed of the property by will, it was a gift, and that exceeded the contemplated and expressed power.

Absolute and exact precedents in the construction of wills are rare, *Taylor* v. *Titcomb*, 92 Maine, 184, but among somewhat analogous cases the following are suggestive and helpful.

"All the rest and residue of my estate . . . I give, devise and bequeath to my said wife, to be used and appropriated by her as much

as she may wish for her happiness without any restrictions or limitations whatsoever, and I give, devise and bequeath whatever of said property remains undisposed of at the decease of my said wife to "C" etc. *Mansfield* v. *Shelton,* 67 Conn., 390.

"I give and bequeath to my beloved husband all the residue of my estate, . . that I may die possessed of, to use the same as to him may seem best and to sell all the real estate or any part thereof as he may desire . . . If at the time of the death of my said husband any part of my said real estate or personal estate may not have been used or expended by him," shall pass to the legal heirs of the testatrix. *Gruenewald* v. *Neu,* 215 Ill., 132.

A devise to the wife "to her own use and behoof forever," provided that if any of the property which I have given my beloved wife aforesaid shall not have been expended by her for her support and maintenance during her lifetime" so much as remained should go to certain persons named. *Chase* v. *Ladd,* 153 Mass., 126.

Our conclusion therefore is that the husband, William B. Austin, was given a life estate by implication in the estate of his wife, coupled with a qualified power to dispose of the same during his lifetime for his own use, but not a power to dispose of the unused portion by will, as he attempted to do, and that at his decease the unused remainder passed to the cousins of the testatrix or their heirs, as the wife intended and expressly provided that it should under the succeeding clause four of the will.

This construction satisfies all the words of the will, harmonizes all its provisions, effectuates the actual purpose of the testatrix and violates no positive rule of legal construction.

We think that the parties were justified in applying to this Court for instructions, and it is proper that the estate involved should bear the reasonable expense of the litigation. *Bailey* v. *Worcester,* 103 Maine, 170, 178. Reasonable counsel fees may be fixed by the sitting Justice.

> *Bill sustained with costs.*
> *Decree in accordance with the*
> *opinion.*

DUNN, J., and MORRILL, J., did not concur.