NEAL DOW AND FIRST PORTLAND NATIONAL BANK,
TRUSTEES UNDER THE WILL OF FRED N. DOW

*vs.*

KATHERINE DOW BAILEY ET ALS.

Cumberland.    December 15, 1950

*Drummond and Drummond,* for complainants,
   Neal Dow and First Portland National Bank, trustees.

*Philip G. Willard,* for defendants, Kate W. Dow,
   Neal Dow and First Portland National Bank, Exrs.

*Francis P. Freeman,* for defendants Neal Dow, Indiv.,
   and Katherine Dow Bailey.

*Kenneth Baird,* for defendants, Kenneth Baird, guardian
   for Dana Dow, Kendall Dow and Neal Dow, Jr.
   Marion Lee Bailey and William Dow Bailey.

*Verrill, Dana Walker, Philbrick and Whitehouse,*
   for Marian Dow Eaton and Annette H. Shedley.

SITTING: MURCHIE, C. J., FELLOWS, MERRILL, NULTY, AND WILLIAMSON, JJ. THAXTER, J., did not sit. FELLOWS, J., dissenting.

MURCHIE, C. J. In this Bill in Equity, the complainants, as trustees under the will of Fred N. Dow, late of Portland, referred to hereafter as the "Trustees" and the "Testator," respectively, seek to have said will, referred to hereafter as the "Will," construed. Their process names all the living descendants of the testator, the executor of the estate of his only deceased descendant, and the widow of that descendant, as parties defendant. A guardian *ad litem* represents all the defendants who are minors and all persons unascertained or not yet in being who may become entitled, at any time hereafter, to any part of the property held by the trustees. Answers filed by or on behalf of all the named defendants, and the unascertained persons, join in praying for a construction of the will. All the answers, except that filed on behalf of the minors and unascertained persons, admit the material factual allegations of the bill, which are denied, as a matter of course, in the answer of the guardian

*ad litem.* Evidence, taken out before a single justice of this court at a hearing on the bill, answers and replications, carries proof of all such allegations. The case was reported to the law court, for final decision, by agreement of all parties, including the guardian *ad litem.*

The issue presented relates to the provisions of Paragraph ELEVENTH of the will and particularly to "Subparagraph (b)" and "Subparagraph (c)" thereof, so referred to hereafter, reading as follows:

> "(b) To pay over to my said son, William H. Dow, or his heirs, in such manner, form and installments, and at such times as may be consistent with, and not obstructive of, the general purposes of this Will, the sum of One hundred thousand dollars, ($100,000.)

> (c) Interest, at the rate of four per cent (4%) per annum, is to be allowed and paid to my said son, or his heirs, by way of income from said Fund, on any portion thereof at any time remaining unpaid. Such interest is to run from the twentieth (20th.) day of the first calendar month next succeeding the sixtieth (60th.) day following the qualification of said trustees, and is to be paid in equal monthly installments, on the twentieth (20th.) secular day of each and every month thereafter, until said Fund has been paid over in full as herein provided."

William H. Dow was one of the executors and trustees named in the will. He survived the testator, qualified as one of his executors and trustees, and received the interest payable under the provisions of subparagraph (c) from a date not disclosed, when such payment was commenced, until December 31, 1947. He died January 31, 1948. No part of the principal of the fund established by subparagraph (b) was paid to him in his lifetime, nor has anything been paid under either subparagraph (b) or subparagraph (c) since his death, although it is apparent that he was entitled, prior thereto, to the interest payable under the latter from December 31, 1947 to January 20, 1948.

The testator died November 27, 1934. The will was dated July 15, 1933. A codicil to it, which has no bearing on its construction, was executed September 23, 1933. The codicil changed provisions of the will relative to (1) a parcel of real estate made available to Marian Dow Eaton, a daughter of the testator, and her daughter, Annette H. Shedley, during their lives, as a home, and (2) the effective date of a memorial established for the father of the testator, described in the will as a man "more widely known than any other who was born and spent his life in Portland."

The will was drafted by the testator when, to quote his own language from it, he was mindful that his life was "rapidly drawing toward its close" and when his only children, a son and daughter heretofore named, who were his most obvious natural beneficiaries, were 68 and 64 years old, respectively, as is disclosed in an inheritance tax computation to which reference will be made hereafter. The testator had, at the time, three grandchildren, two of whom were the issue of the son and one of the daughter. The proportional division of the income of the trust established by Paragraph ELEVENTH of the will, after the fund provided by subparagraph (b) was paid out, declared in subparagraph (d) of Paragraph ELEVENTH, and the division of the estate on final distribution, declared in subparagraph (e) thereof, assuming the existence of living issue of either the son or the daughter at that time, was expressly declared to be controlled by the fact that the son had two children and the daughter one. Failing such living issue when the time for division came, it was to be among designated charities.

Many rules for the construction of wills, declared in decided cases, have been given recognition in this court, but all of them, applicable to particular facts and circumstances, have been held, as was said in *Giddings et al.* v. *Gillingham et al.*, 108 Me. 512, 81 A. 951, to be designed:

"to aid rather than to hinder in the correct deter-
mination of the one controlling factor, the intent
of the testator."

Such intention, as was said very recently in *Merrill Trust
Co.* v. *Perkins et als.*, 142 Me. 363, 53 A. (2nd) 260, "takes
precedence over all else." The manner in which the inten-
tion is to be ascertained is well stated in *Bryant et al.* v.
*Plummer et al.*, 111 Me. 511, 90 A. 171, as follows:

"It is an elementary, fundamental, and prevail-
ing rule which must govern in the construction of
a will, that the entire document should be care-
fully examined, parts compared with other parts,
provisions considered with reference to other pro-
visions, and, from the whole instrument, from all
that it discloses, relative to the nature and extent
of the estate of the testator, the size of his boun-
ties, the relationship, needs, conditions, and en-
vironment of his beneficiaries, as well as from the
precise language used in the parts over which
doubts have arisen, ascertain if possible the inten-
tion of the testator when he used that language.
This rule is of such long standing and wide adop-
tion that citation of authorities would seem un-
necessary."

This indicates clearly that the issue raised in the present
case must be resolved by considering the will as an entirety
and determining the intention of the testator therefrom.
The first ten paragraphs, exclusive of Paragraph THIRD,
disposed of what proved to be approximately 14.5% of the
disposable estate of the testator. Paragraph THIRD
created a trust fund of $100,000 for Marian Dow Eaton and
Annette H. Shedley aforesaid, the income therefrom, not
exceeding 4%, to be paid to said Marian Dow Eaton during
her lifetime and thereafter to said Annette H. Shedley dur-
ing hers, with power to invade the principal, within stated
limitations, "in the sole judgment" of the trustees. This
fund represented an additional approximate 16% of such
disposable estate. The disposition of all the rest, residue

and remainder thereof, representing approximately 69.5% of the whole, was under Paragraph ELEVENTH, another 16% (of the whole) under subparagraph (b) and the balance, or 53.5%, under subparagraph (e). The income, pending final distribution, was to be distributed under subparagraph (d). Paragraphs TWELFTH to SIXTEENTH, inclusive, were devoted to conferring powers on the executors and trustees; enjoining them to take ample time for the disposal of real estate; directing them to use a designated property as an estate office, and to continue to employ a grandson, Neal Dow, son of William H. Dow, therein, so long as he continued "competent and trustworthy." The final, SEVENTEENTH, paragraph named the executors and trustees and expressed the desire of the testator, which has become effective, as the process shows, that said Neal Dow be appointed trustee, to succeed William H. Dow, or to act in his stead, in the event of the death of said William H. Dow during the term of the trust, or of his failure to act as trustee.

The will is unusual, if not unique. Immediately following its declaration of its publication, and of the revocation of all former wills, it directed the executors to turn the management of the estate of the testator over to the trustees, after paying funeral charges and expenses of administration, and providing for the perpetual care of a cemetery lot. It directed the trustees to assume the indebtedness of the testator, and pay the same, in due time, and to set aside the trust fund of $100,000 for Marian Dow Eaton and Annette H. Shedley, in accordance with Paragraph THIRD, "as soon after their qualification as is practicable." The provisions in connection therewith are in marked contrast to those of subparagraph (b). The $100,000 provided for Marian Dow Eaton and Annette H. Shedley was to be set aside "as soon * * * as * practicable." The income therefrom, not exceeding 4%, and, under appropriate circumstances, increments of the principal, were to go to them,

during their lives. The $100,000 provided for "William H. Dow, or his heirs," in subparagraph (b), was to be paid in installments, at a time or times presumably relatively remote, but each installment, when paid, was to become the absolute property of the beneficiary. Pending payment, interest at 4% was to be paid thereon.

The provisions of Paragraphs FOURTEENTH and FIFTEENTH of the will make it apparent that the testator contemplated that the trust representing approximately 53.5% of what proved to be his disposable estate, called hereafter the "Residuary Trust," was to endure for a substantial period of time. Paragraph FOURTEENTH charged the executors and trustees to bear in mind the advantages of taking time for the disposal of real estate, and Paragraph FIFTEENTH expressed the testator's "wish and desire" that his undoubtedly substantial indebtedness should be paid by them, as far as possible, from the income of the Residuary Trust, although recognizing that some part of the *corpus* of it might be required therefor. The provisions of subparagraphs (d) and (e) of Paragraph ELEVENTH relate to the Residuary Trust. They have no bearing on either the $100,000 provided for Marian Dow Eaton and Annette H. Shedley, and the issue of the latter, in Paragraph THIRD, to be *set aside*, by the trustees of the testator "as soon after their qualification as is practicable," or the identical amount provided for "William H. Dow, or his heirs," in subparagraph (b), to be *paid over* "in such manner, form and installments, and at such times" as might not be obstructive of the general purposes of the will, or the interest payable thereon, under the provisions of subparagraph (c). By these provisions the daughter, Marian Dow Eaton, and her issue, in the one case, and the son, William H. Dow, or his heirs, in the other, were to have the benefit of $100,000 each, before the amount of the Residuary Trust was determinable.

The inheritance tax paid to the state was computed by the Inheritance Tax Commissioner, referred to hereafter as

the "Commissioner," February 24, 1936 and paid February 26, 1936, while William H. Dow was acting as one of the executors (or trustees) under the will. The computation of the commissioner construed subparagraph (b) as giving William H. Dow a life interest in the fund, with the remainder to his two children, Neal Dow and Katherine Dow Bailey, who were his heirs presumptive when the will was drawn and executed and his heirs-at-law at the time of his death. That construction is, of course, not binding on the executors of the estate of William H. Dow who, with his widow, now claim that a vested interest passed to William H. Dow, whereby all installments of either principal or interest, when paid, must be paid to said executors, their successors or assigns, or on Marian Dow Eaton, Annette H. Shedley and the guardian *ad litem,* who join in asserting that subparagraph (b) gave a contingent right, and nothing more, to William H. Dow, for the period of his lifetime. Concerning the rights carried by the will upon the death of William H. Dow, these parties take views that are in sharp conflict. We shall deal with their separate claims before taking up that of the executors of the will of William H. Dow, and his widow.

The claim of Neal Dow and Katherine Dow Bailey is grounded in the assertion that the testator, in using the words "or his heirs," in subparagraphs (b) and (c), indicated his intention to designate them as alternative or substitutionary legatees, to receive, in place of William H. Dow, any part of the principal and interest, payable under said subparagraphs, not paid to William H. Dow in his lifetime. The case of *Buck* v. *Paine et al.,* 75 Me. 582, while not cited in support of their claim, illustrates the theory underlying it. In that case, where property was left to trustees for a term of three years, for the benefit of two named grandchildren, and it was expressly stated that if either of them should die during that period, "his or her legal heirs" should be substituted for the deceased grandchild "in every

respect," the court recognized that the will passed a fee to each grandchild, but asserted that the death of one of them, during the three-year period, terminated and defeated the fee which had passed to him. These claimants do not rely on an interest in fee vested in William H. Dow and terminated or defeated by his death before the fund was paid over, but on the claim that he took a life estate and nothing more. They cite such cases as *Bradbury* v. *Jackson et al.*, 97 Me. 449, 54 A. 1068, and *Barry et al.* v. *Austin*, 118 Me. 51, 105 A. 806, to sustain their claim. That one named as a beneficiary in a will without express declaration that the estate intended for him is limited to the term of his life may take nothing thereunder except a life interest, or such an interest coupled with a power, limited or unlimited, to invade the principal, cannot be doubted, but no case has been cited to us, nor are we aware of any, where such a result has been declared on no other ground than that a testator, after naming a beneficiary, added the words "or his heirs." We do not believe that such a testamentary intention can be read into the use of thòse words in this case.

The claim of Marian Dow Eaton, Annette H. Shedley and the guardian *ad litem* is based in part, also, on the words "or his heirs." Special emphasis is laid by these claimants, however, on the fact that under the will, the trustees were, and are, to pay over the fund in question in such manner and at such time or times as may be consistent with the general purposes of the will. They assert that the provisions of the will to that effect, following the designation of alternative or substitutionary legatees, indicated the intention of the testator that nothing greater than a contingent right should pass under either subparagraph (b) or subparagraph (c) until the time for payment arrived. They assert, also, that this is indicated by the fact that neither subparagraph (b) nor subparagraph (c) carries any words of present gift. For authority on the controlling force of the omission of such words, they cite *Giddings* v. *Gillingham, supra,* and quote from it as follows:

"The 'disposition' is not made by the testator at the time of his death, but is to be made by his legal representatives after the decease of his wife. Nowhere in the will is there a gift or bequest to these legatees independent of the direction to his executors or trustees to pay them at a future time. The gift, therefore, implied from the direction to pay, speaks as of the time of payment and not as of the date of the testator's death. The courts have always held that the fact that there are no words of present gift has great weight in indicating that the testator intended that the title should not vest until the period of distribution should arrive, and that the bequest should be contingent until that time."

\* \* \* \* \* \*

"One of the subordinate rules is that when the only gift is found in the direction to pay or distribute at a future time, the gift is future and not immediate, contingent but not vested. Its reason is plain. The direction has no reference to the present and can be executed only in the future, and if in the meantime the donee shall die the direction cannot be exercised at all."

In view of the fact that our own court, in deciding *Moulton* v. *Chapman et al.,* 108 Me. 417, 81 A. 1007, six days after using the quoted language, said of the principle to which it relates, and for which authorities were cited from Massachusetts and New York:

"But, it is said by one of the courts most frequently applying the rule, that it will hesitate to apply it where the gift is to legatees by name",

and that, thereafter, in deciding *Bryant* v. *Plummer, supra,* it asserted that the reasons which led the court to decide *Giddings* v. *Gillingham, supra,* as it did:

"were based upon the general scope and purpose of the will, as well as upon the particular language of the will, thus adhering to the broader and safer rule that the intention of the testator must govern when that intention is ascertainable",

it seems unnecessary to refer to the Massachusetts and New York cases so cited. It is pertinent, however, to note that the Massachusetts cases (four in number) are all cited in either or both of two relatively recent Massachusetts decisions which indicate that the principle in question is closely confined. See *Tyler* v. *City Bank Farmers Trust Co. et al.*, 314 Mass. 528, 50 N. E. (2nd) 778; and *Barker et al.* v. *Monks et al.*, 315 Mass. 620, 53 N. E. (2nd) 696. We do not believe that the testamentary intention on which these claimants rely can be read into the will because of the omission of words of present gift in subparagraph (b).

The real issue of the case is whether William H. Dow took a vested interest under said subparagraph (b). The claim of the executors of the will of William H. Dow, and his widow, is that he did. That claim has the support of a very substantial bulk of authority in the decisions of this court. Many of them have recognized it as a well-established principle of testamentary construction that all estates created by wills should be considered as vested rather than contingent whenever the testamentary intention which should be controlling would not be defeated thereby. *Kimball* v. *Crocker et al.*, 53 Me. 263; *Woodman* v. *Woodman et al.*, 89 Me. 128, 35 A. 1037; *Hersey* v. *Purington et al.*, 96 Me. 166, 51 A. 865; *Storrs* v. *Burgess et al.*, 101 Me. 26, 62 A. 730; *Moulton* v. *Chapman, supra; Giddings* v. *Gillingham, supra; Danforth* v. *Reed et al.*, 109 Me. 93, 82 A. 699; *Blaine et al.* v. *Dow et al.*, 111 Me. 480, 89 A. 1126; *Bryant* v. *Plummer, supra; Strout* v. *Strout et al.*, 117 Me. 357, 104 A. 577; *Carver et al.* v. *Wright et al.*, 119 Me. 185, 109 A. 896; *Belding et al.* v. *Coward et al.*, 125 Me. 305, 133 A. 689; *Abbott et al.* v. *Danforth et al.*, 135 Me. 172, 192 A. 544.

In *Kimball* v. *Crocker, supra,* the first of these cases, Chief Justice Appleton indicated that his decision was giving effect to what was said, in *Duffield* v. *Duffield,* 1 Dow & Clark, 311, which he cited and quoted, to have "long been

an established rule for the guidance of the Courts of Westminster." As there stated:

> "all estates are to be holden to be vested, except estates in the devise of which a condition precedent to the vesting is so clearly expressed that the Courts cannot treat them as vested without deciding in direct opposition to the terms of the will. If there be the least doubt, advantage is taken of the circumstances occasioning the doubt; and what seems to make a condition is holden to have only the effect of postponing the right of possession."

In *Blaine* v. *Dow, supra,* it was said that the presumption that a testator intended to create vested estates, rather than contingent ones, was so strong that all such estates should be:

> "regarded as vesting, unless the testator has by very clear words manifested an intention that they should be contingent upon a future event."

In *Morse et al.* v. *Ballou et al.,* 109 Me. 264, 83 A. 799, as in *Belding* v. *Coward, supra,* it was recognized that the presumption of vesting has special force when a devise or bequest to a child is under consideration. See also the cases cited therein: *Wengerd's Estate,* 143 Pa. St. 615, 22 A. 869; and *Atchinson* v. *Francis,* 182 La. 37, 165 N. W. 587.

The single point upon which all parties to the case are in agreement is that the controlling consideration, as stated heretofore, on the authority of *Giddings* v. *Gillingham, Merrill Trust Co.* v. *Perkins,* and *Bryant v. Plummer,* all *supra,* is to be found in the intention of the testator, as expressed in the will. Whether we apply the test as declared in *Kimball* v. *Crocker, supra,* quoting from *Duffield* v. *Duffield, supra,* that all estates shall be holden vested except those where conditions precedent are so clearly expressed that courts cannot hold them otherwise:

> "without deciding in direct opposition to the terms of the will",

or the more recent statement in *Belding* v. *Coward, supra,* that all estates should be held vested:

> "unless the testator has by very clear words manifested an intention that they should be contingent upon a future event",

the result is the same. Nothing can be found in the will to justify assertion that it would be "in direct opposition" to the terms of the will to find that William H. Dow took a vested estate, or that a contrary intention has been manifested by "very clear words." In this connection it is pertinent to note that this court, in *Woodman* v. *Woodman, supra,* adopted the definition between vested and contingent remainders given in Washburn on Real Property, Vol. 2, Chap. 4, Sec. 1, viz:

> " 'The broad distinction between vested and contingent remainders is this: In the first, there is some person *in esse* known and ascertained, who, by the will or deed creating the estate, is to take and enjoy the estate upon the expiration of the existing particular estate, and whose right to such remainder no contingency can defeat. In the second, it depends upon the happening of a contingent event whether the estate limited as a remainder shall ever take effect at all. The event may either never happen, or it may not happen until after the particular estate upon which it depended shall have determined, so that the estate in remainder will never take effect' ",

and has reaffirmed that acceptance on more than one occasion since. *Giddings* v. *Gillingham; Bryant* v. *Plummer; Belding* v. *Coward,* all *supra.* The situation presented here is not identical with that dealt with in any of those cases where the control depended upon the death of a particular person or the lapse of a definite period of time. That presented in *Bryant* v. *Plummer, supra,* is, however, comparable to the present one in many respects. No remainder was involved in it. The issue was whether one of two legatees

who were to take property into possession at the expiration of ten years took a vested interest therein at the death of the testator. It was held that he did. That legatee died within two years of the death of his testator, but at the termination of the trust, more than eight years later, the share that would have passed to him at that time, had he been living, was declared to be the property of his estate.

Reading the will as an entirety in the light of the well-established principle relative to the vesting of estates created by will, we conclude that the testator intended William H. Dow to inherit the fund to be paid out pursuant to the provisions of subparagraph (b). Considering the care with which it was drafted, and the provisions it contained protective of the testator's over-all plan for the disposal of his property, it does not admit of doubt that he was aware both that an approximate million dollars was involved and that his son and daughter were the natural objects of his bounty. He was acutely conscious, also, of what he believed his father had represented in his lifetime. The real question is the extent of the bounty he intended for his son, William H. Dow.

The will bequeathed the distinctly personal belongings of the testator to his son and daughter, excepting particular things he desired should be left in his home when it became a memorial to his father. It next provided a home for his daughter, for life, and for her daughter, thereafter, for hers, to which reference has been made heretofore, as also to the trust fund for those beneficiaries. Thereafter he devoted what proved to be a little less than $13,000, according to the computation of the commissioner, to an annuity for his secretary, and $1,700 to bequests to four other employees, conditioned upon their being in his employ at the time of his death. As the fact developed, one was not. The only other appropriation of money carried by the will, except what is contained in Paragraph ELEVENTH, is the provision for the memorial to his father, which the

commissioner found to involve something slightly in excess of $65,000. The balance of the estate was disposed of by Paragraph ELEVENTH, in language appropriate for disposing of the residue of an estate, but the disposition of $100,000 of the principal to which it applied was to be taken therefrom before the Residuary Trust was set up. From that Residuary Trust, William H. Dow, in his lifetime, his children, after his death, and the issue of those children, ultimately, were to take twice the share, of income and principal, left to the daughter, her child, and the issue of the latter. The fact that William H. Dow had two children and his sister one seemed to the testator to represent ample reason for making a larger provision for William H. Dow than for his sister. Whatever he was intended to take under the will, as principal, other than the personal belongings left to him and his sister in Paragraph FIRST, he must take under subparagraph (b). The $100,000 it controls is the identical amount provided for his sister in Paragraph THIRD. That was an undoubted life estate, and the method of its establishment as such demonstrates conclusively that the testator knew full well what language was appropriate for the purpose. Reference to subparagraph (e) of Paragraph ELEVENTH discloses that he knew equally well how to create a contingent estate. He made provision therein that his estate should be divided share and share alike among named charities when the Residuary Trust terminated "failing * living issue" of the children of his son and daughter. There is nothing in the will which would justify belief that the testator intended to make any provision for his daughter, other than the providing of a home, larger than a corresponding one for his son who, because of a larger family, was to take twice the share of the daughter in the Residuary Trust.

A final consideration, which counsel for the executors of the will of William H. Dow, and his widow, urge on the authority of *Hersey* v. *Purington, supra,* is that the com-

bined effect of subparagraphs (b) and (c) is to give to the beneficiary under the former the full benefit of the fund to which it relates almost immediately on the qualification of the trustees. As was said in that case, on the authority of Redfield on Wills:

> "Judge Redfield states it as the result of all the cases that where the income of the estate is given to the donee, in the meantime, it affords the most satisfactory evidence that the testator intended to give the *corpus* of the estate, but only deferred the time of coming into possession."

The will is construed as disclosing the intention of the testator to give William H. Dow, if living, the $100,000 to be paid out by the trustees under subparagraph (b), when available for payment in accordance with the terms of the will, and to give that principal sum, in the same manner, to the heirs of said William H. Dow, if he was not living at the death of the testator. That this identical result might have been accomplished without the use of the words "or his heirs," by the operation of R. S., 1944, Chap. 155, Sec. 10, constitutes no sufficient reason, as has already been indicated, for holding that the use of them carries any controlling effect.

The trustees should be directed to pay to the executors of the estate of William H. Dow all interest payable under subparagraph (c), and the full principal amount payable under subparagraph (b), as the latter becomes payable, under the provisions of the will.

Each answer filed in the case carries an appropriate prayer for costs, including the reasonable fees and expenses of counsel. The questions raised, as was said in *Giddings* v. *Gillingham, supra,* "might well give rise to doubts." Proper allowances for costs, including reasonable fees and expenses of counsel, should therefore be awarded the parties and allowed in the probate accounting. The case is remanded for the entry of a decree to be entered in accordance with this opinion.

*Decree accordingly.*

FELLOWS, J. (Dissenting) I regret that I cannot agree with the construction placed upon the terms of this will in the opinion by the Chief Justice. It is, therefore, proper that I briefly state my reasons.

I am unable to overlook the testator's use of the word "or" in paragraph eleven, subparagraphs (b) and (c) of the will, and I cannot avoid giving effect to what I am convinced the testator intended when he said "pay over."

This will is a lawyer's own will to which he clearly gave long and careful thought. The testator, Fred N. Dow, says "to *pay over* to my said son, William H. Dow *or his heirs* * * * * at such times as may be consistent with * * * * the general purposes of this will the sum of one hundred thousand dollars." After thus directing in (b) that the trustees *pay over* the $100,000 the testator directs in (c) to pay to William H. Dow *"or his heirs"* interest at the rate of 4% on any portion at any time remaining unpaid.

The "general purposes of the will" were evidently to preserve the real estate and to use at first the income to clear debts existing at the time of the testator's death. No part of the $100,000 was paid. Did the testator intend this sum to be so vested that it was alienable, or did he intend, by the word "or," for this sum of $100,000 to go to William H. Dow, or to the heirs at law of William H. Dow determined as of the date of payment? If the use of the words "or his heirs" carries no controlling effect, as the opinion states, why were they used in this carefully drawn will?

I cannot believe, upon consideration of the whole will, that it was the intention of this cautious and technical testator that his use of the word "or" should mean "and" as construed in the opinion. He intended an alternative or substitute gift to those who were heirs at the time of payment. *Union Safe* v. *Wooster,* 125 Me. 22; *Wyman* v. *Kenney* (Vt.), 10 Atl. (2nd) 191 and cases, including the *Wooster* case, there cited; *Delaware County Trust* v. *Hanby,*

19 Del. Chan. 228, 165 A. 568. See also Vol. 3 "Property,' American Law Institute Restatement of the Law, Section 252, where this rule is adopted.

Another reason is, that the testator made no other disposition except for the trustees *to pay* at some future time. Our court has stated that such provision has great weight. "When the only gift is found in the direction to pay or distribute at a future time, the gift is future and not immediate, contingent but not vested. Its reason is plain. The direction has no reference to the present and can be executed only in the future, and if in the meantime the donee shall die, the direction cannot be exercised at all." *Giddings* v. *Gillingham,* 108 Me. 512, 518; *Storrs* v. *Burgess,* 101 Me. 26; *Moulton* v. *Chapman,* 108 Me. 417.

I agree that any of the 4% interest unpaid, up to the time of the death of William H. Dow, may be considered as vested in William H. Dow. The unpaid principal was not so vested.